[No. 20985. Department Two. November 9, 1928.]

YAKIMA VALLEY BANK & TRUST COMPANY, *Respondent,*
v. YAKIMA COUNTY *et al., Appellants.*[1]

*R. G. Sharpe, G. E. Clark, O. Sandvig,* and *M. C. Delle,* for appellants.

*Rigg & Venables* and *Nat U. Brown,* for respondent.

[1]Reported in 271 Pac. 820.

ASKREN, J.—This action was brought by the plaintiff bank to recover a portion of the taxes paid by it under protest for the year 1926, and for the recovery of like-claimed excess taxes paid the same year by twenty other banks in Yakima county, all of which claims were assigned to the plaintiff for suit.

The substance of the action is that the capital stock of the banks in question was assessed in 1926 at fifty per cent of the full and fair value of the stock, while property generally in the county was intentionally valued at not to exceed forty-four per cent of its true value. To the complaint, a demurrer was interposed and overruled, whereupon the county elected to stand upon its demurrer, and appealed when judgment was entered in favor of the plaintiff.

■ The main ground of the demurrer argued below and in this court involves the question of whether an appeal from an unlawful discriminatory assessment by the taxing authorities must first be presented to the county and state boards of equalization, and if relief is there denied then to the courts, or whether the courts may be resorted to in the first instance. A brief review of the history of our statutes providing for actions of this character will be helpful in disposing of the question.

Prior to 1890 the statute provided as follows:

"Sec. 2879. During the session of the board for the equalization of taxes and the correction of the assessment roll, any person or his attorney or agent may attend and apply for the correction of any alleged error in the listing and valuation of his property, and a failure to so attend and apply shall bar said person from further recourse in law, as to the valuation, but not as to error in description or to double assessment." Code of 1881, § 2879.

In that year a new and comprehensive act was passed, which omitted entirely from its provisions the

main elements of the section we have just set out. The distinction between the two may best be noticed by quoting from our opinion in *Whatcom County v. Fairhaven Land Co.*, 7 Wash. 101, where we held that it was unnecessary for a taxpayer to appear before the board.

"Every one of the board's duties is there put into mandatory language: (1) They *shall* examine and compare the returns of the assessment of property (not in the county but) of the several towns or districts, so that *all* property shall be entered at its true and fair value. (2) They *shall* raise the valuation of land which in their opinion is returned below its true and fair value—after two days' notice. (3) They *shall* reduce the valuation of the land where in their opinion the assessment is too high; but nothing is said about an appearance or complaint by any person—it is their opinion which is to dictate the change. (4) *Upon complaint* they *shall* reduce the valuation of certain personal property. (5) But, most important of all, they shall *not* reduce the aggregate value of the property of their county below the aggregate value thereof as returned by the assessor, except for manifest errors in his valuation. The substance of the old § 2879 is entirely absent from this law; there is no power in the board to subpoena witnesses; and the authority to hear and determine is not expressed. The property owner is nowhere in this law invited to appear and make objections, if any he may have, until we reach § 105 (p. 568), where he is accorded the right to appear and set forth, by answer, the facts constituting his defense or objection to the tax and the penalties thereon, and by § 109 (p. 570) there can be no refuge in technicalities, nor any escape from the payment of a proper tax, but, if the lands "have been partially, unfairly or unequally" assessed, the court may reduce the amount of taxes, and give judgment accordingly."

The doctrine of that decision has been followed by us in *Miller v. Pierce County*, 28 Wash. 110, 68 Pac. 358, and *Puget Realty Co. v. King County*, 50 Wash. 349, 97 Pac. 226.

We now come to the change in the statutes which the appellant insists is controlling and requires an appearance before the boards. In 1925, at the regular session of the legislature, an act was passed providing for the creation of a state tax commission (Laws of 1925, p. 33; Rem. 1927 Sup., § 11087-1). The act generally provides for full and complete power in the commission to hear and determine all tax matters, specifically conferring on the commission, or any member thereof, or officially designated employee, the power to administer oaths in all matters pertaining to the duties of the commission or its proceedings; grants it the power formerly vested in the director of taxation and examination; the general supervision over the administration of tax and assessment laws of the state and over county assessors in particular; to order county boards of equalization to raise or lower the valuations on property for taxing purposes and for hearings before the board. The section of the act most necessary here to be noticed is § 6, which provides:

"Sec. 6. Any taxpayer or taxing unit feeling aggrieved by the action of any county or township board of equalization may appeal to the tax commission by filing with the county auditor a notice of appeal in duplicate within ten days after the action of such board of equalization, which notice shall specify the actions complained of, and said auditor shall forthwith transmit one of said notices to the tax commission. The tax commission shall require the board appealed from to certify the minutes of its proceedings resulting in such action and all evidence taken in connection therewith, and may receive further evidence, and shall make such order as in its judgment is just and proper." Laws of 1925, p. 38; Rem. 1927 Sup., § 11087-6.

Section 7 (Rem. 1927 Sup., § 11087-7) provides for appeal from the tax commission to the superior court.

At the extraordinary session of the legislature in 1925, a new act was passed governing the assessment, levy and collection of taxes. But an investigation of its terms indicates that it is a codification of already existing statutes for the most part. Section 68 of the Laws of 1925, Ex. Ses., p. 269 (Rem. 1927 Sup., § 11097-68), is the one providing for the duties of the county commissioners, sitting as a board of equalization. It is too long to set out in this opinion, but in general it constitutes the board of county commissioners a board of equalization, provides for the raising and lowering of values of real and personal property, and requires the county assessor to keep an accurate record of the proceedings showing the facts and evidence upon which the actions of the board are based.

It is this section which the appellant contends gives the county board of equalization sufficiently broad powers to hear and determine all questions of tax relief. The difficulty of accepting such a contention arises by reason of the fact that § 68 of the Laws of 1925, Ex. Ses., p. 269, is almost identical with § 73 of the Laws of 1890, p. 555, and that section was construed by us adversely to appellant's contention in the cases we have heretofore referred to. Section 73 having been construed by us, it follows that its re-enactment by the legislature is presumed to have been done with intent that its provisions should carry the same construction.

It is a familiar rule of statutory construction that, when a statute has once been construed by the highest court of the state, that construction is as much a part of the statute as if it were originally written into it. 36 Cyc. 1143. The rule is stated by Ruling Case Law, Vol. 25, p. 1075, as follows:

"Construction of Re-enacted Statutes.—It is a settled rule of statutory construction that when a statute

or a clause or provision thereof has been construed by the court of last resort of a state, and the same is substantially re-enacted, the legislature adopts such construction, unless the contrary is clearly shown by the language of the act, or the rules of statutory construction have been changed.''

With this view of § 68, it is hardly necessary to enter into an investigation of the intent of the legislature in passing ch. 18, Laws of 1925, p. 33, creating the state tax commission. While, apparently, very great scope is given the commission, and it may well be that it was intended that such commission should act as a board of appeal from the decisions of the county boards on all tax matters, the failure to change § 73 of the Laws of 1890, p. 555, when it was re-enacted as § 68, Laws of 1925, Ex. Ses., p. 269, so that it would provide for power in the county boards to subpoena witnesses and ''have authority to hear and determine'' (defects pointed out by us heretofore), clearly prevents us from giving it the construction contended for by appellant.

Appellant also urges that the principle enunciated by us heretofore in our decisions applies only to real property, and that, as to personal property taxes, a different rule governs. It is said that our cases are authority for this distinction.

In *Olympia Water Works v. Gelbach,* 16 Wash. 482, 48 Pac. 251, we held that an action would not lie to restrain the county treasurer from selling personal property for taxes, where the complaint did not show that there was any fraud in the assessment of taxes. In that opinion we held that the action of the board was final and no appeal lay therefrom, where

'' . . . the sole question presented is whether or not the board acted under an honest belief in placing a value upon the property, for this is a matter that would not be susceptible of proof.''

In *Chehalis Boom Co. v. Chehalis County,* 24 Wash. 135, 63 Pac. 1123, we held that an appellant, who made no application to the board of equalization for a reduction in the arbitrary value placed on its franchise, was not in position to complain. We also held, however, that an examination of the evidence did not warrant disturbing the judgment of the trial court upon the issue of value. In view of our consideration of the evidence in that case, it may well be doubted whether the statement in the opinion, regarding the failure to apply to the board for relief, was intended as a binding pronouncement of the court upon the question.

A case almost exactly like the one at bar was *Spokane & Eastern Trust Co. v Spokane County,* 70 Wash. 48, 126 Pac. 54, Ann. Cas. 1914B 641. In that action, the complaint alleged that the bank stock of the plaintiff was assessed at a much higher rate than other property in Spokane county, and that this was done by specific intent and design. An appearance was made before the board, and relief denied. In holding that relief could be had, we observed that:

"The facts pleaded do not show an erroneous valuation or a difference in judgment as to a correct measure of value, but rather an intentional and arbitrary discrimination against a particular class of property. Such an arbitrary policy is vicious in principle, violative of the constitution, and operates as a constructive fraud upon the rights of the property holder discriminated against."

Some reliance is placed by appellants upon our decision in *Knapp v. King County,* 17 Wash. 567, 50 Pac. 480, where, in an action over taxes on real estate, we called attention to the fact that *Olympia Water Works v. Gelbach, supra,* involved a tax on personal property and indicated that a different rule applied. But a careful reading of that opinion discloses that we held

the distinction to be that in personal property taxes the action of a board of equalization was final, ''in the absence of fraud or malice,'' while a tax on real estate could be contested on the ground of ''the substantial justice of the tax itself,'' under the statute controlling. Session Laws of 1893, p. 370.

It does not appear that we have ever held that a personal property tax which is fraudulent cannot be attacked in the courts without first applying to the board of equalization. Here the tax as laid was an intentional refusal to follow the requirement that taxes be assessed equally. The case does not involve the question of the value of the property over which there might be a difference of opinion. Indeed respondents make no claim that the property was assessed at more than fifty per cent of its true value, but complain because other property was assessed at only forty-four per cent, a plain and direct violation of the law. We conclude that respondents had a right to contest the tax direct in the courts.

We also conclude that, where an objection to a tax as laid does not raise merely the question of value— over which, as we have often pointed out in these cases involving personal property, there arises usually an honest question of difference of opinion—but presents an intentional refusal to follow the constitutional requirement that all property shall be taxed equally, the property owner has the right to allege fraud therein and apply directly to the courts for relief.

A third question raised by appellant requires little discussion. Respondent's complaint, in alleging that classes of property in Yakima county other than bank stock had been assessed at forty-four per cent, used the year 1925, instead of the year 1926, the year in which the taxes complained of were assessed. Appellant now says that such an allegation was insuffi-

cient to be effective. Respondent, on the other hand, contends that the figure 5 was intended to be, and should have been written 6, and that the error was purely oversight. It is clear to us that this was a typographical error. An allegation as to taxes for the year 1925 would be merely surplusage, have no place in the complaint, and should have been, on motion made to the court, stricken. Able counsel for respondent certainly would not have laden their complaint with such useless allegations, nor can we conceive that the learned trial court would have failed to sustain a motion or demurrer to the complaint because of it.

We find no error in the record and the judgment is affirmed.

FULLERTON, C. J., PARKER, MAIN, and HOLCOMB, JJ., concur.