[No. 38017-0-II.   Division Two.   January 4, 2011.]

KITSAP ALLIANCE OF PROPERTY OWNERS ET AL., *Appellants*, v. THE CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD ET AL., *Respondents*.

*Brian T. Hodges* (of *Pacific Legal Foundation*), for appellants.

*Robert M. McKenna, Attorney General,* and *Martha P. Lantz, Assistant,* for respondent Central Puget Sound Growth Management Hearings Board.

*Russell D. Hauge, Prosecuting Attorney,* and *Lisa J. Nickel, Deputy,* for respondent Kitsap County.

*Tim Trohimovich* (of *Futurewise*) and *Robert A. Beattey* (of *Spencer Law Firm LLC*), for respondents Futurewise, Hood Canal Environmental Council, Kitsap Citizens for Responsible Planning, Judith Krigsman, Jim Trainer, and West Sound Conservation Council.

¶1 KORSMO, J. — In the initial consideration of this appeal, this court concluded that it was required to follow the result of an inconclusive opinion of the Washington Supreme Court and directed that Kitsap County plan for critical areas[1] under the Shorelines Management Act of 1971 (SMA)[2] rather than the Growth Management Act (GMA).[3] The Washington Legislature promptly enacted amendments

---

[1] The Growth Management Act defines several "critical areas," including wetlands and frequently flooded lands that must be protected by local growth management plans. RCW 36.70A.030(5), .130(1).

[2] Ch. 90.58 RCW.

[3] Ch. 36.70A RCW.

clarifying that the GMA was to regulate critical areas until such time as SMA plans were updated and also directed that the amendments be applied retroactively.

¶2 The Washington Supreme Court granted Kitsap County's petition for review of the original ruling and remanded the case to this court for consideration in light of the new legislation. We conclude that the amendments are retroactive and apply to this case. We reverse our previous decision and uphold Kitsap County's critical area ordinance (CAO).

PROCEDURAL HISTORY[4]

¶3 This case has its beginning in Kitsap County's efforts to update the CAO component of its GMA-required comprehensive plan. The nonprofit Kitsap Alliance of Property Owners (KAPO) and two property owners challenged a 35-foot marine shorelines buffer contained in the updated CAO. They argued before the Central Puget Sound Growth Management Hearings Board (Board) that the buffer was excessive. Respondent Hood Canal Environmental Council (Hood Canal) and other parties argued that the buffers were inadequate. The Board rejected KAPO's challenge and sent the case back to the county with directions to increase the buffer zone. Kitsap County amended the CAO by increasing the buffer zone to 50 feet in urban shoreline areas and 100 feet in rural and semirural areas. The Board approved the amended CAO.

¶4 KAPO challenged the two Board rulings in the Kitsap County Superior Court. That body upheld the Board decisions. KAPO then appealed to this court.

¶5 This court reversed. *Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 152 Wn. App. 190, 217 P.3d 365 (2009) (*KAPO* I). The pivotal issue in

---

[4] Substantive facts relating to the critical areas ordinance challenge are found in that section of this opinion.

the case concerned whether the GMA or the SMA applied to the CAO. Specifically, the question was whether the GMA regulated critical areas in shoreland regions subject to both acts or whether the SMA regulated these areas. *Id.* at 193-195. A 2003 amendment to both acts that had attempted to clarify when each act would apply to lands within the purview of both created this issue. *Id.* The Washington Supreme Court had previously faced the same issue in *Futurewise v. Western Washington Growth Management Hearings Board*, 164 Wn.2d 242, 189 P.3d 161 (2008).

¶6 The *Futurewise* court issued two opinions that represented the views of four justices each. The lead opinion of Justice James Johnson concluded that critical area planning could be conducted only under the SMA. *Id.* at 245-247. Justice Madsen concurred only in the result. *Id.* at 248. Justice Chambers' dissenting opinion argued that GMA standards applied until such time as the local SMA master plan was updated. *Id.* at 248-251.

¶7 This court concluded in *KAPO* I that it was bound by the *outcome* of *Futurewise* since it presented the same issue and there was no rationale that had obtained support from a majority of the court. 152 Wn. App. at 197-198. Accordingly, we reversed the trial court and directed that Kitsap County plan for critical areas under the SMA. *Id.* at 198. We also noted the difficulties this created for local governments and urged the legislature to clarify its intent. *Id.*

¶8 The legislature promptly responded in its next session and enacted Laws of 2010, chapter 107. That legislation took effect immediately upon signature by the Governor on March 18, 2010. *Id.* § 6. The legislation also stated that it was retroactive to July 27, 2003. *Id.* § 5.

¶9 Soon thereafter the Washington Supreme Court granted Kitsap County's petition for review and remanded the case with directions that this court consider the effect of the new legislation. Order, *Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, No. 83883-6 (Wash. Apr. 28, 2010); 168 Wn.2d 1031 (2010). We ordered

briefing concerning the new legislation and subsequently heard argument.

## ANALYSIS

¶10 Kitsap County and Hood Canal ask that the legislation be given full retroactive effect. KAPO contends that doing so would infringe on the separation of powers and create problems with vested development rights. It also urges that we not give retroactive effect to the statute because *ex post facto* punishments are prohibited by our constitution and because the legislation is inconsistent with existing CAOs.

¶11 Chapter 107 substantively amends a GMA provision that referenced the SMA in the context of shoreline regulations. After removing some of the former language, the new version of the statute provides in part, that

> development regulations adopted under this chapter [apply] to protect critical areas within shorelines of the state until the department of ecology approves one of the following: A comprehensive master program update, . . . a segment of a master program relating to critical areas, . . . or a new or amended master program.

LAWS OF 2010, ch. 107, § 2 (amending RCW 36.70A.480).

¶12 In essence, this provision rejects the lead *Futurewise* opinion in favor of the dissenting opinion's view of the interaction of the two acts. Although the legislative intent section does not address any court cases by name, it notes that the 2003 amendments

> (1) . . . have been the subject of differing, and occasionally contrary, legal interpretations. This act is intended to affirm and clarify the legislature's intent relating to the provisions of chapter 321, Laws of 2003.
>
> (2) The legislature affirms that development regulations adopted under the growth management act to protect critical areas apply within shorelines of the state as provided in section 2 of this act.

(3) The legislature affirms that the adoption or update of critical area regulations under the growth management act is not automatically an update to the shoreline master program.

(4) The legislature intends for this act to be remedial and curative in nature, and to apply retroactively to July 27, 2003.

*Id.* § 1.

¶13 Typically, new legislation, including amendments to existing law, is given prospective application unless there is clear intent to apply the law retroactively. *Howell v. Spokane & Inland Empire Blood Bank*, 114 Wn.2d 42, 47, 785 P.2d 815 (1990). Remedial and procedural statutes are often retroactive. *In re Pers. Restraint of Mota*, 114 Wn.2d 465, 471, 788 P.2d 538 (1990). A legislative decision to apply a law retroactively will be honored unless there is a constitutional impediment to doing so. *Wash. State Farm Bureau Fed'n v. Gregoire*, 162 Wn.2d 284, 302-303, 174 P.3d 1142 (2007).

¶14 Here, legislative intention that the 2010 amendments apply retroactively is clearly stated in two sections of the statute. Thus, unless the constitution prohibits that decision, the new amendments should be applied to this case. *Id.* We therefore turn our attention to KAPO's arguments against retroactive application.

*Separation of Powers*

¶15 KAPO initially argues that the amendments cannot be retroactive because they contravene judicial and quasi-judicial decisions, implicating the separation of powers doctrine. As relevant here, the separation of powers doctrine prohibits the legislature from retroactively changing the judicial interpretation of a statute. *E.g.*, *Farm Bureau Fed'n*, 162 Wn.2d at 304; *State v. Varga*, 151 Wn.2d 179, 191, 86 P.3d 139 (2004). KAPO contends that the legislature retroactively changed judicial construction of the 2003 statute. We disagree.

¶16 Once the Washington Supreme Court has authoritatively construed a statute, the legislation is considered to

have always meant that interpretation. *E.g., Johnson v. Morris*, 87 Wn.2d 922, 927-928, 557 P.2d 1299 (1976); *Yakima Valley Bank & Trust Co. v. Yakima County*, 149 Wash. 552, 556, 271 P. 820 (1928).

¶17 As we discussed in *KAPO* I, there was no majority interpretation of the 2003 amendments discussing the interplay of the SMA and GMA. *KAPO* I, 152 Wn. App. at 196-197. In *Futurewise*, the eight justices who expressed an opinion on the topic were evenly divided. In that circumstance, this court determined that it had to follow the *result* of *Futurewise* because there was no majority rationale. *KAPO* I, 152 Wn. App. at 197-198.[5] Thus, neither *Futurewise* nor *KAPO* I authoritatively construed the 2003 amendments. Rather, the *Futurewise* court was evenly divided in its construction of the statute and this court in *KAPO* I believed itself bound by the outcome of that case rather than the reasoning of either *Futurewise* opinion. Other courts likewise have concluded that *Futurewise* is not precedential. *Lauer v. Pierce County*, 157 Wn. App. 693, 701, 238 P.3d 539 (2010); *Kailin v. Clallam County*, 152 Wn. App. 974, 985, 220 P.3d 222 (2009).

¶18 An opinion lacking precedential value is the same as the court never having construed the statute. In the latter situation, it was once noted:

> But where this court has not previously interpreted the statute to mean something different and where the original enactment was ambiguous such to generate dispute as to what the legislature intended, the subsequent amendment shall be effective from the date of the original act, even in the absence of a provision for retroactivity.

*Overton v. Econ. Assistance Auth.*, 96 Wn.2d 552, 558, 637 P.2d 652 (1981).

¶19 Legislative response to the confusion about the 2003 amendments did not amount to overturning a settled con-

---

[5] *KAPO* I also noted that only four justices had addressed the interplay issue in the earlier decision in *Biggers v. City of Bainbridge Island*, 162 Wn.2d 683, 169 P.3d 14 (2007). 152 Wn. App. at 195-196. Once again, there was no majority view on the meaning of the 2003 amendments.

struction of the statute. Rather, the legislature stepped in to clarify its intent in the face of judicial uncertainty. We believe that the legislature can appropriately make its clarification retroactive in this situation.

¶20 The 2010 amendments do not violate the separation of powers doctrine.

*Vested Rights*

¶21 KAPO next argues that retroactive application of the 2010 statute will infringe on vested development rights. Nothing in the record of this case suggests that is so.

¶22 Washington's vested rights doctrine entitles a property owner to have development plans processed under the law in effect when a completed application is filed. *Abbey Rd. Grp., LLC v. City of Bonney Lake*, 167 Wn.2d 242, 250, 218 P.3d 180 (2009).[6] Legislation cannot be applied retroactively where doing so would affect vested rights. *Lummi Indian Nation v. State*, 170 Wn.2d 247, 261, 241 P.3d 1220 (2010); *Hale v. Wellpinit Sch. Dist. No. 49*, 165 Wn.2d 494, 507, 198 P.3d 1021 (2009); *Farm Bureau Fed'n*, 162 Wn.2d at 304-305.

¶23 The 2003 and 2010 legislation concerned which process was to be used to create a CAO; it did not involve the impact of a CAO to a particular development plan. The new legislation expressly states that "a use or structure legally located within shorelines of the state that was established or vested" before a local CAO "may continue as a conforming use and may be redeveloped or modified." LAWS OF 2010, ch. 107, § 2. In light of our vested rights doctrine and the new legislation's express acknowledgement of it, we do not see any vesting problem with the 2010 amendments. None of the parties in this case claims to have any vested development right that was impaired by the new statute. Under the circumstances, there simply is no vested rights problem presented here.

---

[6] That policy is also codified at RCW 19.27.095.

¶24 The new statute does not run afoul of our vested rights doctrine.

*Ex Post Facto Legislation*

■■ ¶25 KAPO also contends that retroactive application will constitute *ex post facto* legislation by subjecting property owners to civil and criminal sanctions for development that occurred under preexisting CAOs. That argument misapprehends what is retroactive under the new legislation.

¶26 The United States Constitution prohibits enactment of *ex post facto* laws by either Congress or by the States. U.S. CONST. art. I, §§ 9, 10. The Washington Constitution similarly prohibits *ex post facto* laws. WASH. CONST. art. I, § 23. These provisions mean that one cannot be held criminally accountable for actions that were not criminal at the time they were performed, nor punished more severely than was authorized when the crime was committed. *State v. Parker*, 132 Wn.2d 182, 191, 937 P.2d 575 (1997); *In re Pers. Restraint of Powell*, 117 Wn.2d 175, 184, 814 P.2d 635 (1991). These constitutional protections do not apply to civil actions. *Heidgerken v. Dep't of Natural Res.*, 99 Wn. App. 380, 391 n.6, 993 P.2d 934, *review denied*, 141 Wn.2d 1015 (2000).

¶27 KAPO argues that some local governments have updated their development regulations since 2003 to include civil and criminal penalties for failing to comply with CAOs.[7] It then argues that a retroactive application of the 2010 amendments would expose property owners to the increased penalties for lawful development "that does not comply with the provisions of a retroactively instated critical area ordinance." Suppl. Appellant's Br. Re: Engrossed House Bill 1653, at 16. There is no claim that any party to this case is subject to some type of retroactive enforcement action.

---

[7] KAPO does not identify whether these plans were created under SMA or GMA authority.

¶28 The new legislation does not retroactively impose CAOs, nor does it make a local CAO retroactive to 2003. Instead, it simply clarifies that critical areas may be regulated under GMA plans until such time as the area SMA plan is overhauled. A GMA-based CAO becomes effective when it is adopted; it is not retroactive to 2003. While the 2010 law clarifies that GMA plans that include CAOs were authorized since 2003, it does nothing more than that. There are no *ex post facto* criminal provisions in the 2010 legislation.

¶29 Laws of 2010, chapter 107 does not violate the *ex post facto* provisions of our state and federal constitutions.

### Noncompliance with Amended GMA

¶30 Finally, KAPO urges that giving retroactive effect to the new legislation will render existing local plans noncompliant with the GMA. We do not agree.

¶31 The argument is unclear, but it seems to focus on the fact that the amendment to RCW 36.70A.480(3)(c)(i) of the 2010 legislation provides for protection of existing nonconforming uses under the vested rights doctrine and therefore somehow requires that CAOs be retroactively amended to include that protection. LAWS OF 2010, ch. 107, § 2. Thus, KAPO reasons, the 2010 amendments should be prospective only so that existing CAOs are not invalidated.

¶32 We need not address KAPO's remedy argument because it has failed to establish any inconsistency in the legislation. As we noted previously in our discussion of vested rights, the new legislation included a provision recognizing that until the area SMA plan was updated, any "use or structure" that was legally "established or vested" before the local CAO "may continue as a conforming use and may be redeveloped or modified." LAWS OF 2010, ch. 107, § 2. Nothing in this language compels any CAO to contain language that recognizes vested rights or requires the local plan to specifically designate preexisting uses as conforming uses. The new language will prevent CAOs from treating preexisting uses as nonconforming uses, but it does not

invalidate existing CAOs that are inconsistent. Instead, any GMA-based CAOs that address nonconforming uses will have to be adjusted to comply with the 2010 legislation.

¶33 The possibility that existing local ordinances might conflict with the new legislation is not a basis for limiting the new legislation. The new legislation does not require CAOs to have particular language or invalidate them. There is simply no basis for invalidating either the new legislation or Kitsap County's CAO on the basis of section 2 of the new statute.

¶34 In summary, honoring the legislative decision to give the 2010 statute retroactive effect is proper because the amendments do not contravene an existing judicial interpretation of the statute. By its terms, the new law does not infringe on vested development rights, and it is not a prohibited *ex post facto* law. It also does not invalidate existing CAOs. We hold that the 2010 amendments are retroactive and provide authority for Kitsap County to enact its CAO as part of its comprehensive plan required by the GMA.

## REMAINING ISSUES

¶35 The *KAPO* I opinion was decided on procedural grounds and did not address KAPO's substantive arguments that the shoreline buffers were not based on the best available science and constituted an impact fee in violation of RCW 82.02.020. Preliminarily, there are two other procedural matters to address first.

### Hood Canal Standing

¶36 KAPO argues that Hood Canal lacks standing to participate in this action and has moved to strike its briefing. KAPO notes that although Hood Canal's petition was consolidated by the Board with KAPO's petition, Hood Canal never sought to intervene in KAPO's action. KAPO was granted permission to intervene in Hood Canal's action. *See* RCW 36.70A.280.

¶37 In the appeal to this court, Hood Canal joined Kitsap County (County) in defending the expanded shoreline buffers. A prevailing party before the Board may argue any ground supported by the record to defend the Board's order. *Whidbey Envtl. Action Network v. Island County*, 122 Wn. App. 156, 167-168, 93 P.3d 885 (2004) (*WEAN*). Thus, we believe Hood Canal has standing to participate in the defense against KAPO's appeal. The motion to strike Hood Canal's briefing is denied.

### KAPO Briefing

¶38 Kitsap County moved to strike three documents attached to KAPO's supplemental brief to the Washington Supreme Court. The motion was referred back to this court. The documents in question come from Jefferson and Whatcom Counties. KAPO admits that they are not contained in the record of this case but contends they should be given judicial notice on the issue of how the 2010 legislation will impact other counties.

¶39 In light of our decision on KAPO's challenges to the new legislation, this motion is moot. Accordingly, the motion to strike is denied.[8]

### Best Available Science

¶40 This court reviews a board decision under the 1988 Administrative Procedure Act, chapter 34.05 RCW, applying the standards of RCW 34.05.570(3) directly to the record before the Board. *City of Redmond v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 136 Wn.2d 38, 45, 959 P.2d 1091 (1998). Reviewing courts consider only the evidence, findings, and conclusions in the agency record and grant relief if the Board has misinterpreted or misapplied

---

[8] On its merits, the motion would have been granted. The record on appeal consists of documents presented to the trial tribunal. RAP 9.1(c). The new legislation did not exist when this matter was tried. However, KAPO has not sought to expand the record with these documents. RAP 9.11. It is possible to take judicial notice of easily accessible sources of accurate facts. *State ex rel. Humiston v. Meyers*, 61 Wn.2d 772, 779, 380 P.2d 735 (1963). Judicial notice is not taken of local administrative policies. *Id.*

the law, the order is not supported by substantial evidence, or the order is arbitrary or capricious. RCW 34.05.570(3); *Pub. Util. Dist. No. 1 of Pend Oreille County v. Dep't of Ecology*, 146 Wn.2d 778, 790, 51 P.3d 744 (2002). The Board's legal conclusions are reviewed *de novo*, giving deference to the agency's interpretation of the statute it administers. *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 142 Wn.2d 543, 553, 14 P.3d 133 (2000). The party challenging the Board's decision carries the burden of showing that the action is invalid. RCW 34.05.570(1)(a); *Clallam County v. W. Wash. Growth Mgmt. Hearings Bd.*, 130 Wn. App. 127, 133, 121 P.3d 764 (2005), *review denied*, 163 Wn.2d 1053 (2008).

¶41 KAPO contends the shoreline buffers adopted in the CAO are not established by the "best available science" RCW 36.70A.172(1) requires. It argues that the buffers were based on science specifically developed for freshwater inland streams, without scientific evidence that those buffers are applicable to marine shorelines. The Board in its "Order Finding Compliance" found that the County increased the buffer width for the urban, rural, and semirural shorelines based on competent science in the record. Administrative Record (AR) Tab 87, at 6 (Order Finding Compliance, *Hood Canal Envtl. Council v. Kitsap County*, No. 06-3-0012c). This court may grant relief from the board decision if substantial evidence does not support it. RCW 34.05.570(3)(e). "Substantial evidence is evidence sufficient to persuade a fair-minded person that the Board's order is correct." *Clallam County*, 130 Wn. App. at 133.

¶42 Initially, the County contends that this issue is moot because chapter 107 provides a new standard for protecting shoreline areas. The County cites the amendment to RCW 90.58.030(3)(b), which defines the shoreline "master program." The entire provision, with the added language underlined, is as follows:

(b) "Master program" shall mean the comprehensive use plan for a described area, and the use regulations together with

maps, diagrams, charts, or other descriptive material and text, a statement of desired goals, and standards developed in accordance with the policies enunciated in RCW 90.58.020. "Comprehensive master program update" means a master program that fully achieves the procedural and substantive requirements of the department guidelines effective January 17, 2004, as now or hereafter amended.

LAWS OF 2010, ch. 107, § 3. This legislation does not support the County's argument. As KAPO responds, nothing in chapter 107 amends the GMA's "best available science" provision in RCW 36.70A.172. KAPO's challenge is not moot.

¶43 In developing land use regulations, a county must include the best available science to protect the functions and values of critical areas. RCW 36.70A.172(1); *Stevens County v. Futurewise*, 146 Wn. App. 493, 498, 192 P.3d 1 (2008), *review denied*, 165 Wn.2d 1038 (2009). No precise definition of "best available science" is found in the statutes or in case law, but the phrase is generally interpreted to require local governments to analyze valid scientific information in a reasoned process. *Ferry County v. Concerned Friends of Ferry County*, 155 Wn.2d 824, 835 n.9, 123 P.3d 102 (2005). The County need not develop its own scientific information, but it may rely on scientific recommendations and resources from state and federal natural resource agencies and other reliable sources. *Id.* at 836; *Stevens County*, 146 Wn. App. at 512; WAC 365-195-905, -910. Evidence of the best available science must be in the record, as well as evidence that the County considered the best available science substantively in its development of the critical areas ordinance. *Honesty in Envtl. Analysis & Legislation (HEAL) v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 96 Wn. App. 522, 532, 979 P.2d 864 (1999); *WEAN*, 122 Wn. App. at 171.

¶44 On appeal before this court, KAPO no longer argues that the County's classification of its entire marine shoreline as a critical area is unsupported by the best available scientific evidence. KAPO confines its argument

to the contention that the County ignored KAPO's scientific information and chose irrelevant science related to inland freshwater streams when developing the critical areas ordinance.[9] It cites *WEAN*, 122 Wn. App. at 174, as an example of a county that relied on studies that did not focus on all the relevant functions and values for inland stream buffers.

¶45 In *WEAN*, the Board found some of Island County's critical areas regulations noncompliant with the GMA, in part because the county rejected inland buffer recommendations by the Washington Department of Fish and Wildlife (Fish & Wildlife) and the Department of Ecology. *Id.* at 171-172. The county relied instead on an expert who had developed an inventory of marine rather than inland shoreline wildlife and habitat. *Id.* at 173. Furthermore, the expert's study recommended 15- to 30-meter buffers for the protection of inland streams; yet he testified at the hearing that a 25-foot buffer on certain streams (in this case, Type 5 streams that do not support fish) was recommended. *Id.* at 172. This expert also conceded that he based his recommendation on water quality functions rather than on all functions related to stream buffers, including the protection of wildlife species other than fish. *Id.* at 174. The Board concluded that the county did not base its Type 5 stream buffers on the best available science and the Court of Appeals concluded that the Board was correct. *Id.* at 175.

¶46 Unlike in *WEAN*, the Board in this case concluded that the County appropriately considered the best available science and linked its buffer widths to the func-

---

[9] KAPO also contends Hood Canal is precluded by the doctrine of judicial estoppel from asserting on appeal that the best available science supports the current marine shoreline buffers. Hood Canal argued before the Board and in the superior court that the County was not compliant because the buffers were too narrow and too easily reduced by exemptions. (AR Tabs 38, 78.) Judicial estoppel is an equitable doctrine that prevents a party from gaining an advantage by asserting one position in court and later taking a clearly inconsistent position. *Cunningham v. Reliable Concrete Pumping, Inc.*, 126 Wn. App. 222, 224, 108 P.3d 147 (2005). Hood Canal's assertion on appeal to this court that the County relied on the best available science is not inconsistent with its position before the Board and the superior court. It merely argued before that this science required even wider buffers to protect marine shoreline critical areas.

tions and values of critical fish and wildlife conservation areas. Order Finding Compliance (AR Tab 87, at 6-7). Although the Board recognized that scientific studies have not yet determined the appropriate *marine* buffer widths (the "immature science" discussed in *Tahoma Audubon Society v. Pierce County*, Central Puget Sound Growth Management Hearings Bd., No. 05-3-0004c, Final Decision and Order (July 12, 2005) at 43 & n.27), the County was compelled to apply the best *available* science to establish buffers for marine shoreline critical areas. AR Tab 60, at 41-42 (Final Decision and Order). In fact, the GMA requires periodic updates to the CAOs so that outdated science is replaced by the newest science available. AR Tab 60, at 41 (Final Decision and Order) (citing RCW 36.70A.130(1); *Ferry County*, 155 Wn.2d at 837-838).

¶47 Contrary to KAPO's contentions, the board record contains scientific information confirming that buffers along freshwater and marine shoreline areas serve similar functions related to protection of critical areas. These functions include preventing pollution and sediments from entering the waters, stabilizing slopes, providing shade to regulate microclimates, and providing nesting sites and prey for fish and other wildlife. AR Tab 60, at 42 n.52 (Final Decision and Order) (citing G.D. Williams and R.M. Thom, "Marine and Estuarine Shoreline Modification Issues," Batelle Marine Science Laboratory for Fish & Wildlife (Apr. 2001) (AR Tab 38, Index 590 *White Paper*); & James S. Brennan & Hilary Culverwell, "Marine Riparian: An Assessment of Riparian Functions in Marine Ecosystems" (2004) (AR Tab 42, Index 776, at 4)). These and multiple other studies in the record support the Board's conclusion "that the chosen buffer widths provide increased protections to marine habitat by controlling water temperature, sediment, erosion and providing large woody debris, each of which is a contributing factor to habitat protection and conservation." AR Tab 87, at 6 (Order Finding Compliance); *see, e.g.*, AR Tab 37, Index 91, at 53 (Christopher W. May, "Stream-Riparian Ecosystems in the Puget Sound Lowland

Eco-Region: A Review of Best Available Science" (2003)); AR Tab 37, Index 114, at 9 (Kitsap Cnty. Dep't of Cmty. Dev., "A Summary of Best Available Science Review: Kitsap County Critical Areas" (Dec. 2004)).

¶48 During the process of creating the CAO, the County set up a technical review committee to review all the sources of best available science. This committee included representatives of many interested groups, including KAPO, Ecology, Fish & Wildlife, tribes, realtor and homebuilder groups, and the county planning commission. The members compiled best available science and created a list of considerations for the County to use in developing the CAO. AR Tab 60, at 10 (Final Decision and Order); AR Tab 42, Index 1332 (Final Decision and Order). Additionally, the County held public meetings with scientific experts to address questions about the best available science. AR Tab 60, at 10 (Final Decision and Order). The County undertook a reasoned process to analyze the available science and determined that the best available science required buffers of 50 feet on urban marine shorelines and 100 feet on semirural and rural marine shorelines. There is substantial evidence in the record to support the Board's determination. *King County*, 142 Wn.2d at 553; *Clallam County*, 130 Wn. App. at 133.

¶49 Our review of the record confirms that the evidence supports the Board's determination. In addition, deference to the Board's expertise also leads to the same conclusion. The best available science supports the buffers.

*Impact Fee Statute*

¶50 Finally, KAPO contends the County's marine shoreline buffer requirement violates the impact fee statute, RCW 82.02.020. We conclude that particular challenge is not properly before this court, but the related due process challenge was presented below. We agree that the buffers satisfy the constitutional standard.

¶51 The statute generally provides that the state preempts the field of imposing certain taxes. RCW 82.02.020;

*Isla Verde Int'l Holdings, Inc. v. City of Camas*, 146 Wn.2d 740, 753, 49 P.3d 867 (2002). As relevant here, the statute prohibits most direct or indirect taxes, fees, or charges against development of land. RCW 82.02.020; *Isla Verde*, 146 Wn.2d at 753-754. The statute does not preclude, however, a dedication of land or an easement within a proposed development if the local government can demonstrate that such dedication or easement is "reasonably necessary as a direct result of the proposed development or plat to which the dedication of land or easement is to apply." RCW 82.02.020, *quoted in Isla Verde*, 146 Wn.2d at 754. The governmental entity carries the burden of showing a nexus and rough proportionality between the required dedication and the impact of the proposed development. *Trimen Dev. Co. v. King County*, 124 Wn.2d 261, 274, 877 P.2d 187 (1994) (citing *Dolan v. City of Tigard*, 512 U.S. 374, 129 L. Ed. 2d 304, 114 S. Ct. 2309 (1994)); *Citizens' Alliance for Prop. Rights v. Sims*, 145 Wn. App. 649, 657, 665, 187 P.3d 786 (2008), *review denied*, 165 Wn.2d 1030 (2009).

¶52 KAPO did not include violation of RCW 82.02.020 in its statement of issues presented to the Board, yet it cited the statute in a due process argument in its prehearing brief:

> Development regulations, which include critical areas ordinances adopted to protect the environment, are subject to basic due process limitations. . . . Specifically, the rules must be the product of a legitimate objective of government, be reasonably related to that objective, and consider the community. In Washington, these principles are also codified in RCW 82.02.020, which prohibits the assessment of any tax or fee on property where not "reasonably necessary."

AR Tab 37 (citation omitted) (Pet'r KAPO Prehearing Br. at 14). The Board did not address whether RCW 82.02.020 applies and KAPO did not specifically petition for review of this aspect of the Board's Final Decision and Order. *See* Clerk's Papers (CP) at 8-15 (Pet. for Review), 98-137 (Pet'r's Opening Br.).

¶53 Generally this court cannot review an issue that was not adequately raised before the Board unless (1)

the petitioner did not know and had no duty to discover facts that gave rise to the issue; (2) the petitioner did not have an opportunity to raise the issue before the Board; or (3) the issue arose from a change in controlling law or a change in agency action and the interests of justice require its resolution. RCW 34.05.554(1)(a)-(d); *King County v. Wash. State Boundary Review Bd.*, 122 Wn.2d 648, 668, 860 P.2d 1024 (1993). To be properly raised, an issue must be more than slightly referenced in the record. *King County*, 122 Wn.2d at 670.

¶54 KAPO did not argue that RCW 82.02.020 applies in its statement of issues before the Board and did no more than mention in its prehearing brief that due process principles were codified in RCW 82.02.020. It did not further discuss the statute's application in any of the briefs presented to the Board. KAPO does not argue for any of the exceptions to the rule in RCW 34.05.554(1). Accordingly, RCW 34.05.554 precludes us from addressing RCW 82.02.020 on appeal. *King County*, 122 Wn.2d at 668.[10]

¶55 On the other hand, the Board did address KAPO's related due process argument that the critical areas regulations must be reasonably necessary to achieve a legitimate government objective and must satisfy the requirements of nexus and rough proportionality established in *Dolan*, 512 U.S. 374, and *Nollan v. California Coastal Commission*, 483 U.S. 825, 97 L. Ed. 2d 677, 107 S. Ct. 3141 (1987). The nexus rule permits only those regulations that are necessary to mitigate a specific adverse impact of a development proposal. *HEAL*, 96 Wn. App. at 533; *Nollan*, 483 U.S. 825. The concept of rough proportionality limits the extent of the mitigation measures to those

---

[10] In light of this conclusion, we need not address whether RCW 82.02.020 applies to CAOs adopted under the GMA planning process. *See Citizens for Rational Shoreline Planning v. Whatcom County*, 155 Wn. App. 937, 940, 230 P.3d 1074 (holding that RCW 82.02.020, which does not apply to the state, is not applicable to shoreline master plans approved by the Department of Ecology), *review granted*, 170 Wn.2d 1001 (2010); *cf. Citizens' Alliance for Prop. Rights*, 145 Wn. App. at 663 (concluding that local ordinance was not required by GMA and declining to reach argument that RCW 82.02.020 did not apply to CAOs adopted under GMA).

that are roughly proportional to the impact they are designed to mitigate. *HEAL*, 96 Wn. App. at 534; *Dolan*, 512 U.S. 374. Regulations adopted under the GMA that impose conditions on development applications must comply with the nexus and rough proportionality tests. *HEAL*, 96 Wn. App. at 533.

¶56 The Board concluded that the constitutional questions related to nexus and rough proportionality were beyond the Board's jurisdiction and had to be reserved for resolution by the courts. (AR Tab 60, at 46); *see Lewis County v. W. Wash. Growth Mgmt. Hearings Bd.*, 157 Wn.2d 488, 513, 139 P.3d 1096 (2006) (J.M. Johnson, J., dissenting/concurring) (GMA boards are not allowed to reach constitutional or equitable issues or disputes related to impact fees). And the constitutional questions *were* addressed by the superior court, which concluded that the County's consideration of the best available science and application of a reasoned process to determine the necessity of protecting functions and values in the critical areas satisfied the nexus and rough proportionality requirements. CP at 256 (Mem. Op. and Order). KAPO appropriately appealed from the superior court's decision and this issue is properly before this court. RAP 2.4(a).

¶57 In *HEAL*, Division One of this court noted that the principles of nexus and rough proportionality are important constitutional limitations on a local government's discretion to regulate development applications. 96 Wn. App. at 533. "If a local government fails to incorporate, or otherwise ignores the best available science, its policies and regulations may well serve as the basis for conditions and denials that are constitutionally prohibited." *Id.* If the local government used the best available science in adopting its critical areas regulations, the permit decisions it bases on those regulations will satisfy the nexus and rough proportionality rules. *Id.* at 534.

¶58 As discussed above, the County considered the best available science and employed a reasoned process in adopting its shoreline critical areas ordinance, including

the buffers for urban, semirural, and rural shorelines. The superior court's conclusion that the County accordingly did not engage in an unconstitutional taking and satisfied the nexus and rough proportionality tests is affirmed. *Id.*

¶59 KAPO did not preserve whether the regulation violates RCW 82.02.020 for appeal. But the superior court did not err in concluding that the County satisfied the nexus and rough proportionality constitutional tests for the shoreline buffers.

## CONCLUSION

¶60 The legislature has clarified that the GMA process is to govern shoreline critical areas until such time as the local SMA plan is updated to include those regions. The legislation is retroactive.

¶61 Kitsap County's CAO satisfies the best available science standard. There is substantial evidence in the record supporting the shoreline buffers required by that ordinance. The buffers also satisfy the rough proportionality standard required by the constitution.

¶62 The judgment is affirmed.

PENOYAR, C.J., and VAN DEREN, J., concur.