246 P.3d 222 (2011)
KITSAP ALLIANCE OF PROPERTY OWNERS, William Palmer and Ron Ross, Appellants,
v.
CENTRAL PUGET SOUND GROWTH MANAGEMENT HEARINGS BOARD, Futurewise, Hood Canal Environmental Council, Kitsap Citizens for Responsible Planning, Kitsap County, Judith Krigsman, Jim Trainer, West Sound Conservation Council, Respondents.
No. 38017-0-II.
Court of Appeals of Washington, Division 2.
January 4, 2011.
*223 Brian Trevor Hodges, Pacific Legal Foundation, Bellevue, WA, for Appellants.
Martha Patricia Lantz, City of Tacoma Office of the City Attorn., Tacoma, WA, Lisa J. Nickel, Kitsap County Prosecuting Atty's. Office, Port Orchard, WA, Tim Trohimovich, Futurewise, Robert A. Beattey, Attorney at Law, Seattle, WA, for Respondents.

OPINION PUBLISHED IN PART
KORSMO, J.
¶ 1 In the initial consideration of this appeal, this court concluded that it was required to follow the result of an inconclusive opinion of the Washington Supreme Court and directed that Kitsap County plan for critical areas[1] under the Shorelines Management Act of 1971 (SMA)[2] rather than the Growth Management Act (GMA).[3] The Washington Legislature promptly enacted amendments clarifying that the GMA was to *224 regulate critical areas until such time as SMA plans were updated and also directed that the amendments be applied retroactively.
¶ 2 The Washington Supreme Court granted Kitsap County's petition for review of the original ruling and remanded the case to this court for consideration in light of the new legislation. We conclude that the amendments are retroactive and apply to this case. We reverse our previous decision and uphold Kitsap County's critical area ordinance (CAO). In the unpublished portion of this opinion, we conclude that the ordinance was supported under the best available science standard of the GMA.

PROCEDURAL HISTORY[4]
 3 This case has its beginning in Kitsap County's efforts to update the CAO component of its GMA-required comprehensive plan. The nonprofit Kitsap Alliance of Property Owners (KAPO) and two property owners challenged a 35-foot marine shorelines buffer contained in the updated CAO. They argued before the Central Puget Sound Growth Management Hearings Board (Board) that the buffer was excessive. Respondent Hood Canal Environmental Council (Hood Canal) and other parties argued that the buffers were inadequate. The Board rejected KAPO's challenge and sent the case back to the county with directions to increase the buffer zone. Kitsap County amended the CAO by increasing the buffer zone to 50 feet in urban shoreline areas and 100 feet in rural and semirural areas. The Board approved the amended CAO.
¶ 4 KAPO challenged the two Board rulings in the Kitsap County Superior Court. That body upheld the Board decisions. KAPO then appealed to this court.
¶ 5 This court reversed. Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hearings Bd., 152 Wash.App. 190, 217 P.3d 365 (2009) (KAPO I). The pivotal issue in the case concerned whether the GMA or the SMA applied to the CAO. Specifically, the question was whether the GMA regulated critical areas in shoreland regions subject to both acts or whether the SMA regulated these areas. Id. at 193-195, 217 P.3d 365. A 2003 amendment to both acts that had attempted to clarify when each act would apply to lands within the purview of both created this issue. Id. The Washington Supreme Court had previously faced the same issue in Futurewise v. Western Washington Growth Management Hearings Board, 164 Wash.2d 242, 189 P.3d 161 (2008).
¶ 6 The Futurewise court issued two opinions that represented the views of four justices each. The lead opinion of Justice James Johnson concluded that critical area planning could only be conducted under the SMA. Id. at 245-247, 189 P.3d 161. Justice Madsen concurred only in the result. Id. at 248, 189 P.3d 161. Justice Chambers' dissenting opinion argued that GMA standards applied until such time as the local SMA master plan was updated. Id. at 248-251, 189 P.3d 161.
¶ 7 This court concluded in KAPO I that it was bound by the outcome of Futurewise since it presented the same issue and there was no rationale that had obtained support from a majority of the court. 152 Wash.App. at 197-198, 217 P.3d 365. Accordingly, we reversed the trial court and directed that Kitsap County plan for critical areas under the SMA. Id. at 198, 217 P.3d 365. We also noted the difficulties this created for local governments and urged the legislature to clarify its intent. Id.
¶ 8 The legislature promptly responded in its next session and enacted Laws of 2010, chapter 107. That legislation took effect immediately upon signature by the Governor on March 18, 2010. Id. at § 6. The legislation also stated that it was retroactive to July 27, 2003. Id. at § 5.
¶ 9 Soon thereafter the Washington Supreme Court granted Kitsap County's petition for review and remanded the case with directions that this court consider the effect of the new legislation. Order, Kitsap Alliance of Property Owners v. Cent. Puget *225 Sound Growth Mgmt. Hearings Bd., No. 83883-6 (Wash. Apr.28, 2010); 168 Wash.2d 1031, 231 P.3d 166 (2010). We ordered briefing concerning the new legislation and subsequently heard argument.

ANALYSIS
¶ 10 Kitsap County and Hood Canal ask that the legislation be given full retroactive effect. KAPO contends that doing so would infringe on the separation of powers and create problems with vested development rights. It also urges that we not give retroactive effect to the statute because ex post facto punishments are prohibited by our constitution and because the legislation is inconsistent with existing CAOs.
¶ 11 Chapter 107 substantively amends a GMA provision that referenced the SMA in the context of shoreline regulations. After removing some of the former language, the new version of the statute provides in part, that
development regulations adopted under this chapter apply to protect critical areas within shorelines of the state until the department of ecology approves one of the following: A comprehensive master program update, . . . a segment of a master program relating to critical areas, . . . or a new or amended master program.
Laws of 2010, ch. 107, § 2 (amending RCW 36.70A.480).
¶ 12 In essence, this provision rejects the lead Futurewise opinion in favor of the dissenting opinion's view of the interaction of the two acts. Although the legislative intent section does not address any court cases by name, it notes that the 2003 amendments
(1) . . . have been the subject of differing, and occasionally contrary, legal interpretations. This act is intended to affirm and clarify the legislature's intent relating to the provisions of chapter 321, Laws of 2003.
(2) The legislature affirms that development regulations adopted under the growth management act to protect critical areas apply within shorelines of the state as provided in section 2 of this act.
(3) The legislature affirms that the adoption or update of critical area regulations under the growth management act is not automatically an update to the shoreline master program.
(4) The legislature intends for this act to be remedial and curative in nature, and to apply retroactively to July 27, 2003.
Id. at § 1.
¶ 13 Typically, new legislation, including amendments to existing law, is given prospective application unless there is clear intent to apply the law retroactively. Howell v. Spokane & Inland Empire Blood Bank, 114 Wash.2d 42, 47, 785 P.2d 815 (1990). Remedial and procedural statutes are often retroactive. In re Pers. Restraint of Mota, 114 Wash.2d 465, 471, 788 P.2d 538 (1990). A legislative decision to apply a law retroactively will be honored unless there is a constitutional impediment to doing so. Wash. State Farm Bureau Fed'n v. Gregoire, 162 Wash.2d 284, 302-303, 174 P.3d 1142 (2007).
¶ 14 Here, legislative intention that the 2010 amendments apply retroactively is clearly stated in two sections of the statute. Thus, unless the constitution prohibits that decision, the new amendments should be applied to this case. Id. We therefore turn our attention to KAPO's arguments against retroactive application.

Separation of Powers
¶ 15 KAPO initially argues that the amendments cannot be retroactive because they contravene judicial and quasi-judicial decisions, implicating the separation of powers doctrine. As relevant here, the separation of powers doctrine prohibits the legislature from retroactively changing the judicial interpretation of a statute. E.g., Farm Bureau Fed'n, 162 Wash.2d at 304, 174 P.3d 1142; State v. Varga, 151 Wash.2d 179, 191, 86 P.3d 139 (2004). KAPO contends that the legislature retroactively changed judicial construction of the 2003 statute. We disagree.
¶ 16 Once the Washington Supreme Court has authoritatively construed a statute, the legislation is considered to have always meant that interpretation. E.g., Johnson v. Morris, 87 Wash.2d 922, 927-928, 557 P.2d *226 1299 (1976); Yakima Valley Bank & Trust Co. v. Yakima County, 149 Wash. 552, 556, 271 P. 820 (1928).
¶ 17 As we discussed in KAPO I, there was no majority interpretation of the 2003 amendments discussing the interplay of the SMA and GMA. KAPO I, 152 Wash.App. at 196-197, 217 P.3d 365. In Futurewise, the eight justices who expressed an opinion on the topic were evenly divided. In that circumstance, this court determined that it had to follow the result of Futurewise because there was no majority rationale. KAPO I at 197-198, 217 P.3d 365.[5] Thus, neither Futurewise nor KAPO I authoritatively construed the 2003 amendments. Rather, the Futurewise court was evenly divided in its construction of the statute and this court in KAPO I believed itself bound by the outcome of that case rather than the reasoning of either Futurewise opinion. Other courts likewise have concluded that Futurewise is not precedential. Lauer v. Pierce County, 157 Wash.App. 693, 701, 238 P.3d 539 (2010); Kailin v. Clallam County, 152 Wash.App. 974, 985, 220 P.3d 222 (2009).
¶ 18 An opinion lacking precedential value is the same as the court never having construed the statute. In the latter situation, it was once noted:
But where this court has not previously interpreted the statute to mean something different and where the original enactment was ambiguous such to generate dispute as to what the legislature intended, the subsequent amendment shall be effective from the date of the original act, even in the absence of a provision for retroactivity.
Overton v. Economic Assistance Auth., 96 Wash.2d 552, 558, 637 P.2d 652 (1981).
¶ 19 Legislative response to the confusion about the 2003 amendments did not amount to overturning a settled construction of the statute. Rather, the legislature stepped in to clarify its intent in the face of judicial uncertainty. We believe that the legislature can appropriately make its clarification retroactive in this situation.
¶ 20 The 2010 amendments do not violate the separation of powers doctrine.

Vested Rights
¶ 21 KAPO next argues that retroactive application of the 2010 statute will infringe on vested development rights. Nothing in the record of this case suggests that is so.
¶ 22 Washington's vested rights doctrine entitles a property owner to have development plans processed under the law in effect when a completed application is filed. Abbey Road Group, LLC v. City of Bonney Lake, 167 Wash.2d 242, 250, 218 P.3d 180 (2009).[6] Legislation cannot be applied retroactively where doing so would affect vested rights. Lummi Indian Nation v. State, ___ Wash.2d ___, ___, 241 P.3d 1220 (2010); Hale v. Wellpinit Sch. Dist. No. 49, 165 Wash.2d 494, 507, 198 P.3d 1021 (2009); Farm Bureau Fed'n, 162 Wash.2d at 304-305, 174 P.3d 1142.
¶ 23 The 2003 and 2010 legislation concerned which process was to be used to create a CAO; it did not involve the impact of a CAO to a particular development plan. The new legislation expressly states that "a use or structure legally located within shorelines of the state that was established or vested" before a local CAO "may continue as a conforming use and may be redeveloped or modified." Laws of 2010, ch. 107, § 2. In light of our vested rights doctrine and the new legislation's express acknowledgement of it, we do not see any vesting problem with the 2010 amendments. None of the parties in this case claims to have any vested development right that was impaired by the new statute. Under the circumstances, there simply is no vested rights problem presented here.
¶ 24 The new statute does not run afoul of our vested rights doctrine.

*227 Ex Post Facto Legislation

¶ 25 KAPO also contends that retroactive application will constitute ex post facto legislation by subjecting property owners to civil and criminal sanctions for development that occurred under preexisting CAOs. That argument misapprehends what is retroactive under the new legislation.
¶ 26 The United States Constitution prohibits enactment of ex post facto laws by either Congress or by the States. U.S. Const. art. I, §§ 9, 10. The Washington Constitution similarly prohibits ex post facto laws. Wash. Const. art. I, § 23. These provisions mean that one cannot be held criminally accountable for actions that were not criminal at the time they were performed, nor punished more severely than was authorized when the crime was committed. State v. Parker, 132 Wash.2d 182, 191, 937 P.2d 575 (1997); In re Pers. Restraint of Powell, 117 Wash.2d 175, 184, 814 P.2d 635 (1991). These constitutional protections do not apply to civil actions. Heidgerken v. Dep't of Nat. Res., 99 Wash.App. 380, 391 n. 6, 993 P.2d 934, review denied, 141 Wash.2d 1015, 10 P.3d 1071 (2000).
¶ 27 KAPO argues that some local governments have updated their development regulations since 2003 to include civil and criminal penalties for failing to comply with CAOs.[7] It then argues that a retroactive application of the 2010 amendments would expose property owners to the increased penalties for lawful development "that does not comply with the provisions of a retroactively instated critical area ordinance." Supp. Appellant's Br. Re: Engrossed House Bill 1653 at 16. There is no claim that any party to this case is subject to some type of retroactive enforcement action.
¶ 28 The new legislation does not retroactively impose CAOs, nor does it make a local CAO retroactive to 2003. Instead, it simply clarifies that critical areas may be regulated under GMA plans until such time as the area SMA plan is overhauled. A GMA-based CAO becomes effective when it is adopted; it is not retroactive to 2003. While the 2010 law clarifies that GMA plans that include CAOs were authorized since 2003, it does nothing more than that. There are no ex post facto criminal provisions in the 2010 legislation.
¶ 29 Laws of 2010, chapter 107, does not violate the ex post facto provisions of our state and federal constitutions.

Noncompliance with Amended GMA
¶ 30 Finally, KAPO urges that giving retroactive effect to the new legislation will render existing local plans noncompliant with the GMA. We do not agree.
¶ 31 The argument is unclear, but it seems to focus on the fact that the amendment to RCW 36.70A.480(3)(c)(i) of the 2010 legislation provides for protection of existing nonconforming uses under the vested rights doctrine and therefore somehow requires that CAOs be retroactively amended to include that protection. Laws of 2010, ch. 107, § 2. Thus, KAPO reasons, the 2010 amendments should be prospective only so that existing CAOs are not invalidated.
¶ 32 We need not address KAPO's remedy argument because it has failed to establish any inconsistency in the legislation. As we noted previously in our discussion of vested rights, the new legislation included a provision recognizing that until the area SMA plan was updated, any "use or structure" that was legally "established or vested" before the local CAO, "may continue as a conforming use and may be redeveloped or modified." Laws of 2010, ch. 107, § 2. Nothing in this language compels any CAO to contain language that recognizes vested rights or requires the local plan to specifically designate preexisting uses as conforming uses. The new language will prevent CAOs from treating preexisting uses as nonconforming uses, but it does not invalidate existing CAOs that are inconsistent. Instead, any GMA-based CAOs that address nonconforming uses will have to be adjusted to comply with the 2010 legislation.
¶ 33 The possibility that existing local ordinances might conflict with the new legislation is not a basis for limiting the new legislation. *228 The new legislation does not require CAOs to have particular language or invalidate them. There is simply no basis for invalidating either the new legislation or Kitsap County's CAO on the basis of section 2 of the new statute.
¶ 34 In summary, honoring the legislative decision to give the 2010 statute retroactive effect is proper because the amendments do not contravene an existing judicial interpretation of the statute. By its terms, the new law does not infringe on vested development rights, and it is not a prohibited ex post facto law. It also does not invalidate existing CAOs. We hold that the 2010 amendments are retroactive and provide authority for Kitsap County to enact its CAO as part of its comprehensive plan required by the GMA.
¶ 35 Affirmed.
¶ 36 A majority of the panel having determined that only the foregoing portion of this opinion will be printed in the Washington Appellate Reports and that the remainder having no precedential value shall be filed for public record pursuant to RCW 2.06.040, it is so ordered.
WE CONCUR: PENOYAR, C.J., and VANDEREN, J.
NOTES
[1] The Growth Management Act defines several "critical areas," including wetlands and frequently flooded lands that must be protected by local growth management plans. RCW 36.70A.030(5), .130(1).
[2] Chapter 90.58 RCW.
[3] Chapter 36.70A RCW.
[4] Substantive facts relating to the critical areas ordinance challenge are found in the unpublished portion of this opinion.
[5] KAPO I also noted that only four justices had addressed the interplay issue in the earlier decision in Biggers v. City of Bainbridge Island, 162 Wash.2d 683, 169 P.3d 14 (2007). 152 Wash.App. at 195-196, 217 P.3d 365. Once again, there was no majority view on the meaning of the 2003 amendments.
[6] That policy is also codified at RCW 19.27.095.
[7] KAPO does not identify whether these plans were created under SMA or GMA authority.