[No. 29763-2-III.   Division Three.   June 14, 2012.]

YAKIMA COUNTY ET AL., *Respondents*, v. THE EASTERN WASHINGTON GROWTH MANAGEMENT HEARINGS BOARD, *Defendant*, FUTUREWISE ET AL., *Appellants*.

*Thomas A. Zeilman* (of *Law Offices of Thomas Zeilman*) and *Tim Trohimovich* (of *Futurewise*), for appellants.

*James P. Hagarty, Prosecuting Attorney,* and *Paul E. McIlrath* and *Terry D. Austin, Deputies*; and *Samuel A. Rodabough* (of *Groen Stephens & Klinge LLP*), for respondents.

¶1 BROWN, J. — Futurewise and the Confederated Tribes and Bands of the Yakama Nation (Yakama) appeal the Yakima County Superior Court's reversal of two Eastern Washington Growth Management Hearings Board (GMHB) determinations that the Yakima County Critical Areas Ordinance, Ordinance 13-2007, violated certain riparian requirements of the Growth Management Act (GMA), chapter 36.70A RCW. Generally, Futurewise and Yakama contend the superior court should have left intact the GMHB's stream buffer width and ephemeral stream decisions requiring further Yakima County action, apparently considered adverse to development interests. In a consolidated cross appeal, Yakima County and the Yakima County Farm Bureau Inc. (Farm Bureau) jointly contend the superior court erred in reaching the ephemeral streams issue because it should have been considered moot or otherwise barred by the statute of limitations. We agree with

Futurewise and Yakama that the GMHB correctly decided the stream buffer width issues and that the superior court erred in reversing them, but we reach and disagree with their ephemeral stream arguments and affirm on that issue. Accordingly, we reverse in part and affirm in part.

## FACTS

¶2 The Washington Legislature adopted the GMA in 1990 to minimize the threats to the environment, economic development, and public welfare by uncoordinated and unplanned growth. RCW 36.70A.010; *Whidbey Envtl. Action Network v. Island County*, 122 Wn. App. 156, 163, 93 P.3d 885 (2004) (*WEAN*). Under the GMA, local governments are required to enact development regulations protecting "critical areas," including fish and wildlife habitat conservation areas, wetlands, frequently flooded areas, critical aquifer recharge areas, and geologically hazardous areas. RCW 36.70A.030(5), .060(2). Concerning these critical areas, local governments must include the "best available science" to create their development regulations, typically in the form of critical areas ordinances with special consideration given to conservation or enhancement of anadromous fisheries. RCW 36.70A.172(1). County comprehensive land use plan and development regulations must be reviewed and updated periodically as needed. RCW 36.70A.130(1)(a).

¶3 Yakima County enacted its first critical areas ordinance in 1994 (amended in 1995). Under RCW 36.70A-.130(4)(c), Yakima County was required to complete periodic review and evaluation by December 2006. To that end, it convened a "best available science" advisory group composed of state, federal, tribal, and private scientific professionals in late 2002. Noting little guidance had been given for designating and protecting critical areas, the advisory group sought to assist Yakima County in (1) documenting the best available science, (2) explaining

Yakima County's rationale when it departed from science-based recommendations, and (3) identifying potential risks to the critical areas if Yakima County did depart from the science-based recommendations. In March 2004, the advisory group issued a public-comment first draft. The October 2006 final draft is a 350-page synthesis of scientific reports and studies called "Yakima County's Review of Best Available Science for Inclusion in Critical Areas Ordinance Update" (BAS Review).

¶4 Yakima County, in March 2004, began a public hearings process to discuss amendments to the critical areas ordinance. The process culminated with the enactment of Ordinance 13-2007 that included a new critical areas ordinance codified in Title 16C Yakima County Code (YCC). An amended comprehensive plan and zoning code were adopted as Ordinance 15-2007.

¶5 Futurewise, Yakama, the Washington State Departments of Fish and Wildlife and Commerce, and others filed five separate GMHB petitions for review of Ordinance 13-2007 and Ordinance 15-2007 in February 2008. The GMHB consolidated the five petitions as case no. 08-1--0008c. Later, others intervened as petitioners and respondents, including the Farm Bureau. After Yakima County enacted Ordinance 2-2009 amending Title 16C YCC, the Department of Fish and Wildlife and the Department of Commerce withdrew from the petition for review.

¶6 The GMHB held a hearing on the merits in March 2010 and issued its 96-page final decision and order in April 2010. Relevant here, the GMHB concluded (1) Yakima County's decision not to designate and regulate type 5 ephemeral streams under the critical areas ordinance "failed to comply with the GMA due to the important role these streams play in maintaining the overall health of the stream corridor system," (2) Yakima County's standard stream buffers were not supported by the best available science, (3) Yakima County's standard wetland buffers were within the range of the best available science, and (4) the

allowed minimum adjustments to the stream and wetland buffers failed to comply with the GMA. Administrative Record (AR) at 3726-27, 3760, 3769, 3774.

¶7 Yakima County and the Farm Bureau filed separate but later consolidated petitions for judicial review of the GMHB's order in the Yakima County Superior Court. In February 2011, the superior court concluded the issue of Yakima County's regulation of ephemeral streams was not moot or barred by the statute of limitations, and reversed the GMHB's order that Ordinance 13-2007 must designate ephemeral streams as critical areas. The superior court found the ordinance's stream buffer widths were within the range of the best available science or were reasonably justified outside that range, and therefore reversed the GMHB's decision concluding that the buffers violated the GMA.

¶8 Futurewise and Yakama each filed timely notices of appeal in March 2011. Yakima County and the Farm Bureau filed cross appeals later that month. The appeals and cross appeals were consolidated by this court for review.

## ANALYSIS

### A. Buffers and Allowable Adjustments

¶9 The issue is whether the superior court erred in reversing the GMHB's decision that the standard stream buffers and adjusted minimum stream and wetland buffers adopted in the critical areas ordinance did not comply with the GMA, and that the wetland buffers did comply. Futurewise and Yakama contend Yakima County's adopted stream and wetland buffers fail to protect all the functions and values of these critical areas, as required by RCW 36.70A.172(1). Yakima County and the Farm Bureau (collectively County) respond that the GMHB failed to give proper deference to Yakima County's planning choices related to

buffers, which fall within the range of the BAS Review recommendations.[1]

█ ¶10 The GMHB adjudicates GMA compliance and invalidates noncompliant comprehensive plans and development regulations. *Swinomish Indian Tribal Cmty. v. W. Wash. Growth Mgmt. Hearings Bd.*, 161 Wn.2d 415, 423, 166 P.3d 1198 (2007). Comprehensive plans and development regulations are presumed valid when adopted, and the GMHB will find compliance with the GMA unless it concludes the county, city, or agency action is clearly erroneous in light of the record and the goals and requirements of the GMA. *Id.* at 423-24; *Kittitas County v. E. Wash. Growth Mgmt. Hearings Bd.*, 172 Wn.2d 144, 155, 256 P.3d 1193 (2011); RCW 36.70A.320(1), (3). An action is clearly erroneous if the GMHB develops a firm conviction that a mistake has been committed. *Swinomish*, 161 Wn.2d at 423-24.

¶11 We review the GMHB's decision under the Administrative Procedure Act, applying chapter 34.05 RCW standards directly to the record before the GMHB. *Kittitas County*, 172 Wn.2d at 155. The parties address three grounds for relief: (1) the GMHB erroneously interpreted or applied the law (RCW 34.05.570(3)(d)), (2) the GMHB's order is not supported by substantial evidence (RCW 34.05-.570(3)(e)), and (3) the GMHB's order is arbitrary or capricious (RCW 34.05.570(3)(i)). We review the GMHB's legal conclusions de novo and its findings for substantial evidence. *Kittitas County*, 172 Wn.2d at 155. Although we generally defer to the GMHB's GMA interpretations, its interpretations are not binding. *Id.* at 154; *WEAN*, 122 Wn. App. at 164. We will find an order arbitrary and capricious if

---

[1] Futurewise argues that the County did not assign error to the GMHB's "findings of fact" and therefore cannot challenge these findings on appeal. RAP 10.3(g) requires a party to assign error to each finding of fact it contends was improperly made or to clearly disclose the error in the associated issue pertaining to the error. As the County notes, the GMHB did not enter formal findings of fact. More importantly, the County adequately addresses the GMHB's factual findings in its argument challenging the GMHB's conclusions. We are sufficiently apprised of the challenged findings for review. *Daughtry v. Jet Aeration Co.*, 91 Wn.2d 704, 709-10, 592 P.2d 631 (1979).

it was willful, unreasoning, and made without regard to the facts and circumstances. *Kittitas County*, 172 Wn.2d at 155.

¶12 First, regarding stream buffers, under the GMA Yakima County is required to adopt development regulations to protect critical areas, including wetlands and fish and wildlife habitat conservation areas. RCW 36.70A-.030(5), .060(2). Fish and wildlife habitat conservation areas include "[w]aters of the state" (WAC 365-190-130(2)(f)); this includes all streams. RCW 90.48.020. In chapter 16C.06 YCC, Yakima County sets protections for the "stream corridor system," including "hydrologically related critical areas, streams, lakes, ponds, and wetlands." YCC 16C.06.01(1). The stream corridor system includes perennial and intermittent streams (excluding ephemeral streams) in the stream channel. YCC 16C.06.03(2). As defined in the BAS Review, perennial streams generally flow year-round and are fed mostly by groundwater; intermittent streams flow at limited times, usually more than 30 days per year, and are fed by groundwater and precipitation; and ephemeral streams flow fewer than 30 days a year solely in response to precipitation. More than one-half of the stream corridors in Yakima County flow on an intermittent or ephemeral basis.

¶13 YCC 16C.06.01(1) describes the stream corridor system as "a fragile and highly complex relationship of geology, soils, water, vegetation, and wildlife." In developing regulations designed to protect the functions and values of the stream corridor system, Yakima County sought to "conserve, protect, and, where feasible, restore and enhance this complex relationship." YCC 16C.06.01(1). To that end, Yakima County "established a system of vegetative buffers that are necessary to protect the functions and values of certain hydrologically related critical areas." YCC 16C.06.16. Yakima County recognizes buffers prevent or reduce impact on the functions and values of streams and provide wildlife habitat through avoidance of human activities.

¶14 "Vegetative buffers" are defined in YCC 16C.02.415 as the area extending landward from the ordinary high

water mark of a stream or wetland "allowed to provide, under optimal conditions, adequate soil conditions and native vegetation for the performance of the basic functional properties of a stream corridor, wetland and other hydrologically related critical areas." In 1995, Yakima County adopted maximum and minimum vegetative buffer widths based on categories of streams related to water flow. Former YCC 16A.06.16. The stream types and their buffers were:

| Stream Type | Buffer Width, in feet Standard/(minimum adjustments) |
|---|---|
| Type 1 shoreline streams | 100 |
| Type 2 streams | 75/(25) |
| Type 3 streams (Perennial) | 50/25 |
| Type 4 streams (Intermittent) | 25/(15) |
| Type 5 streams (Ephemeral) | No buffer standards |

¶15 Type 1 streams are major shoreline waters regulated under the Shoreline Master Program rather than under the critical areas ordinance; type 1 buffers are not challenged here. YCC 16C.06.06(1). Type 2 streams are specific surface water streams designated in appendix A of Title 16C YCC. YCC 16C.06.06(2). Type 3 streams are all perennial streams not classified as type 1 or 2. Type 4 streams are all intermittent streams not classified as type 1, 2, or 3. YCC 16C.06.06(3), (4). Type 5 ephemeral streams are not regulated as critical areas. YCC 16C.06.06(5).

¶16 The planning commission and the BAS Review emphasized that riparian buffers are valuable tools for protecting the functions and values of fish and wildlife habitat. In its findings and recommendations to Yakima County for amendments of the critical areas ordinance, the planning commission observed the main goal of the BAS Review regarding buffers was to examine the range of science and to assess how the current buffers fit within that range. The BAS Review advisory committee found no buffer studies specific to the arid regions in Yakima County. Even so, table

2 of the BAS Review identified a range of buffer widths acceptable for different functions:

| Function | Buffer Range, in feet |
| --- | --- |
| Large woody debris/structural complexity | 0 - 525 |
| Organic matter input | 170 - 262 |
| Stream bank stabilization | 10 - 170 |
| Sediment control | 12 - 600 |
| Nutrient and pollutant inputs control | 13 - 860 |
| Microclimate | 141 - 784 |
| Stream shading/water temp. moderation | 33 - 525 |
| Terrestrial wildlife habitat | 25 - 984 |

¶17 These functions generally correspond to the various functions and values recognized in YCC 16C.06.05 for stream channels, streams, lakes, ponds, and wetlands: contributing woody debris and organic matter to the aquatic environment, stabilizing the stream bank and shore, transporting and storing sediment, filtering harmful substances, creating a dynamic habitat mosaic, providing sufficient shade to maintain optimal water temperatures, and supporting a diversity of wildlife habitat. The planning commission combined the various functions listed in the BAS Review to create buffer width ranges and retained the 1995 stream buffers for type 2, 3, and 4 streams. Therefore, Yakima County did not amend the 1995 buffer widths in Ordinance 13-2007.

¶18 On review of the standard stream buffer widths, the GMHB noted RCW 36.70A.060(2) and RCW 36.70A.172 require development regulations to protect all of the functions and values of critical areas based on the best available science. Noting a site-specific analysis of each stream is not always possible, the GMHB approved Yakima County's reliance on standardized buffer widths, as long as they were supported by the best available science. But after consulting

the BAS Review, the GMHB concluded Yakima County's standard buffers for type 2 through type 4 streams fell below the mean buffer for all functions, and below the range of buffer widths for all functions except temperature control and pollutant filtration. "Except for a handful of isolated studies limited to a particular function," the GMHB reasoned, "almost all of the studies cited within the BAS Review recommend buffers of greater than 75 feet." AR at 3767. Finding Yakima County provided no reasoned justification for departing from the best available science, the GMHB concluded Ordinance 13-2007 was noncompliant with the GMA.

¶19 The County contends the GMHB failed to properly defer to Yakima County's growth plan under the GMA, failed to recognize Yakima County used a reasoned process to establish its stream buffers, and failed to recognize the general buffer widths adopted are within the range of the best available science. A county has broad discretion under the GMA in creating development regulations tailored to local circumstances. *Swinomish*, 161 Wn.2d at 430. In *Kittitas County*, 172 Wn.2d at 155, the court addressed the extent to which a growth board must defer to the counties' local planning processes. The petitioners in *Kittitas County* argued that "the mere presence of evidence supporting a county decision as comporting with the GMA entitles that county to board deference." *Id.* at 156. Finding this extreme stance would eliminate a growth board's evaluative role, the court concluded growth boards must consider anecdotal evidence provided by counties and defer to the counties' discretion when, within the constraints of the GMA, more than one appropriate planning choice exists. *Id.* at 156-57. Because the GMA merely requires a county to "include" the best available science in its record and does not require a county to follow the best available science, a county may depart from the best available science if it provides a reasoned justification for such a departure. *Swinomish*, 161 Wn.2d at 430-31.

¶20 Here, Yakima County accepted the planning commission's assessment that the existing stream buffer widths fell within the BAS Review's "range" of general buffer widths related to the functions provided by vegetative buffers. Although the stream buffers for type 2, 3, and 4 streams fell within the BAS Review ranges for some functions, the buffers were insufficient for other functions. In particular, the stream buffers adopted by Yakima County for type 2 streams (75 feet) and type 3 streams (50 feet) do not meet the width requirements for the large woody debris/structural complexity (90 to 525 feet), the organic matter input (170 to 262 feet), or the microclimate (141 to 784 feet) functions listed in table 2 of the BAS Review. For type 4 streams, the 25-foot buffers fail to protect the above functions plus the stream shading/water temperature function (33 to 525 feet) in table 2. The GMA requires regulations for critical areas to protect all functions and values of the designated areas, not just some of the functions. *WEAN*, 122 Wn. App. at 174-75 (citing RCW 36.70A.172(1)). Because the BAS Review concludes the relevant functions and values are included in table 2, the stream buffer regulations should meet all those minimum standards.[2] The stream buffers adopted in Ordinance 13-2007 do not fall within the minimum standards for each function. Consequently, Yakima County must provide a reasoned justification for the departure from those standards. *Swinomish*, 161 Wn.2d at 430-31.

¶21 The superior court concluded the County met its burden of showing a reasoned justification for maintaining the 1995 stream buffers:

---

[2] The County claims that the GMHB's analysis of the best available science focuses on a particular study in the BAS Review—the so-called Knutson/Naef study—to the exclusion of all other scientific studies. But the GMHB actually discusses the buffers recommended by the planning commission in table 2 of the BAS Review as well as multiple other studies, including the one by Knutson/Naef. Yakima County's stream buffers fail to meet the minimum standard for all functions in most of the studies in the BAS Review. *See* AR at 3197-3201, 3386-97, 3764-67.

> Faced with a paucity of applicable [best available science], the County performed a systematic analysis of the available data, including information derived from the actual stream buffers which had been in place since 1995. The County's determination that the existing buffers had been, for the most part, adequately performing their intended function was a reasoned justification for the buffers adopted in the [critical areas ordinance].

Clerk's Papers (CP) at 1151. The record does not support this conclusion. As noted by the GMHB, "[s]ince the County did not believe it was deviating from [best available science], it made no specific findings" to explain its departure from the scientific studies or to identify other goals of the GMA it was implementing by making such a choice. AR at 3767-68. The record does not show Yakima County systematically analyzed the efficacy of the stream buffers in place since 1995, or that "for the most part" these buffers had adequately performed their intended function.

¶22 If the absence of relevant scientific information creates uncertainty about the development risks to a critical areas function, Yakima County must follow WAC 365-195--920(1) and use a " 'precautionary or a no risk approach' " that strictly limits land use activities until the uncertainty is sufficiently resolved. Despite finding no specific science applies to Yakima County, the planning commission admits "the proposed buffers are already the minimum possible to protect stream functions." AR at 3479, 3476. Given this background, Yakima County failed to employ a no-risk approach in adopting stream buffers pending resolution of the uncertainty. WAC 365-195-920(1).

¶23 The GMHB concluded the adopted standard stream buffer widths set forth in YCC 16C.06.16 violated the GMA (specifically RCW 36.70A.060(2) and RCW 36.70A.172(1)) because they were not supported by the best available science and Yakima County provided no reasoned justification for departing from the best available science. Consistently, the GMHB concluded any further buffer reductions to

minimum buffers by administrative adjustment was not supported by the best available science. These conclusions are supported by substantial evidence. *Kittitas County*, 172 Wn.2d at 155.

¶24 Ultimately, Yakima County failed to show it made appropriate planning choices within the GMA constraints. *Id.* at 156-57. The GMHB remanded Ordinance 13-2007 to Yakima County with orders to comply with the GMA. Remand allows Yakima County to reconsider the best available science and either amend the buffers to comply with that science or establish a reasoned justification for departure from that science. *Swinomish*, 161 Wn.2d at 430-31.

¶25 Second, regarding wetland buffers, wetlands are areas "inundated or saturated by surface water or ground water at a frequency and duration to support . . . a prevalence of vegetation typically adapted for life in satu- rated soil conditions." RCW 36.70A.030(21). The GMA spe- cifically defines "wetlands" as critical areas to be protected by development regulations. RCW 36.70A.030(5), .060(2); WAC 365-190-030(4)(a). According to the BAS Review, Washington has lost about 25 percent of its inland wetlands due to agricultural conversion, development, construction of levees and dams for flood control and irrigation, ground- water withdrawal, and other factors. Approximately two percent of the Yakima basin is wetland. In the semi-arid lowlands of Yakima County, these wetlands are critical to many species of wildlife because wetlands provide vegeta- tion for food and cover, support invertebrates, and provide water. Wetland functions are grouped into three broad categories: biogeochemical functions (improving water quality by trapping and transforming chemicals and sedi- ment), hydrologic functions (maintaining water flow and recharge), and food web and habitat functions (supporting wildlife). Buffers around wetlands protect mainly the water quality and wildlife habitat functions.

¶26 The BAS Review advisory group consulted several scientific studies on wetlands, including a wetland science

synthesis produced by the state Department of Ecology, the state Department of Fish and Wildlife, and Sheldon and Associates Inc., as well as a synthesis prepared by the United States Environmental Protection Agency. The buffer recommendations for protecting wetlands ranged from 25 feet to 197 feet as a minimum and 98 feet to 350 feet as a maximum. The BAS Review noted a study summarizing research conducted before 1990 concluded that minimal effectiveness in protecting both water quality and wildlife habitat requires buffers between 49 and 98 feet.

¶27 Ordinance 13-2007 retained the wetland buffers adopted in 1995, stating that "there has been no evidence or testimony that any significant environmental degradation has occurred with the existing wetland buffers." AR at 2812-13. The existing buffers are grouped according to wetland types: type 1 (unique or rare, relatively undisturbed, sensitive to disturbance, with a high level of functions, and impossible or too difficult to replace in a human lifetime); type 2 (more common but still need a relatively high degree of protection, with high levels of some functions, and difficult but not impossible to replace); type 3 (smaller, less diverse, and/or more isolated from other natural resources); and type 4 (with the lowest level of functions, often heavily disturbed, could be replaced and even improved). YCC 16C.06.16; YCC 16C.07.04. The standard buffers retained in Ordinance 13-2007 include:

Type 1 wetlands—200 feet
Type 2 wetlands—100 feet
Type 3 wetlands—75 feet
Type 4 wetlands—50 feet.

The adjustment minimum for all types is 25 feet. YCC 16C.06.16, tbl.6-2. All of the standard buffers and none of the adjusted minimum buffers fall within the recommended buffer dimensions of most of the summarized studies found in the BAS Review.

¶28 Ecology sent several letters to Yakima County during and after development of Ordinance 13-2007, urging

adoption of wider wetland buffers to reflect the increased threats to critical wetland areas from high intensity land use. The buffers recommended by Ecology were:

Type 1—250 feet

Type 2—200 feet

Type 3—150 feet

Type 4—50 feet (the same as the type 4 buffers already adopted).

AR at 1844. The county planning commission was aware most of the development projects proposed near wetlands are high impact uses but chose not to include land use intensity in its consideration of wetland buffers:

> Very few uses that require permits fall in the low-intensity category. Moderate-intensity uses will be uncommon and generally found in rural areas. Many [critical areas ordinance] permits that the Planning Division tends to see fall in the high-intensity use category. Almost all urban permit applications would be high-intensity. The wetland buffers recommended by the [planning commission] in the [critical areas ordinance] are very close to the wetland buffers proposed by [Ecology] for moderate intensity uses, and less than the high-intensity uses. This is one reason the [planning commission] chose not to use the use-intensity-based buffer system. Using the concept of a use-intensity-based buffer, but not using the buffer widths and the science it was built on would not meet the requirement of using [best available science].

AR at 3480; *see also* AR at 1844, 3279, 3770-71.

¶29 In its review of the wetland buffers, the GMHB acknowledged the BAS Review shows the importance of assessing the intensity of urbanization and other land use adjacent to wetlands. "In fact," the GMHB states, "the BAS Review shows in all but a few functions, urbanization results in major disturbances of environmental factors or major negative impacts." AR at 3770-71. Even so, the GMHB concluded that the adopted wetland buffers were within the range of the BAS Review and that Yakima County was not required to adopt Ecology's recommendations.

■ ■ ¶30 As noted, Futurewise did not petition the superior court for review of the GMHB's decision upholding Yakima County's standard wetland buffers and no party addresses whether the issue is properly before us. "The [Administrative Procedure Act] provides the exclusive means for seeking judicial review of agency action." *King County v. Cent. Puget Sound Growth Mgmt. Hearings Bd.*, 138 Wn.2d 161, 178, 979 P.2d 374 (1999) (citing RCW 34.05.510). Both the Administrative Procedure Act and the GMA require a party seeking judicial review of a growth board's decision to file a petition for review within 30 days after the decision is filed. *Id.*; RCW 34.05.542(2); RCW 36.70A.300(5). Because Futurewise did not file a petition for review, it waived review of the GMHB's decision upholding the standard wetland buffers. *King County*, 138 Wn.2d at 178.

■ ¶31 The County timely petitioned for judicial review of the GMHB's conclusion that the adjusted minimum wetland buffer width of 25 feet was not within the range of the best available science. As with adjustments to the minimum stream buffers, the minimum wetland buffer is permitted if the developer shows constraints due to existing structures, parcel size, and property boundaries. YCC 16C-.03.23(1). An adjustment permit may be granted based on certain considerations, including the proximity of the project to a critical area, the project's impact on the critical area, and the overall intensity of the proposed use. YCC 16C.03.23(3)(b). The 25-foot minimum buffer adjustment may be reduced further if the developer shows a hardship caused by parcel boundaries or existing on-site development. YCC 16C.03.23(3)(d). The adjustment must not result in degradation of the critical area and must include buffer averaging or buffer enhancement to enhance the functions and values of the hydrologically related critical area. YCC 16C.03.23(3)(a)(iii), (b)(vi).

¶32 As the GMHB noted, the 25-foot minimum wetland buffer adjustment could reduce a buffer nearly 90 percent

(from 200 feet to 25 feet). Just two studies in the BAS Review synopsis of buffer dimensions based on multiple wetland functions suggest a minimum buffer of 25 feet, and one of those studies concluded the minimum necessary to protect buffers and streams is 49 feet. Yakima County gives no basis in the BAS Review for such a reduction and does not require individual adjustments to be based on the best available science. Additionally, Yakima County does not provide a reasoned justification for departing from the best available science. Thus, the GMHB did not err in concluding the provision in Ordinance 13-2007 and YCC 16C.06.16 allowing administratively approved minimum wetland buffers of 25 feet is clearly erroneous and violates the GMA. *Kittitas County*, 172 Wn.2d at 155; *Swinomish*, 161 Wn.2d at 430-31.

¶33 Third, regarding exemptions, Futurewise originally assigned error to the exemptions to the critical areas ordinance found in former YCC 16C.03.07, former YCC 16C.03.08, and former YCC 16C.03.09, adopted in Ordinance 13-2007. Pending resolution of this case, Yakima County enacted Ordinance 6-2011, which repealed the exemptions in question. Futurewise agrees with the County that the issue of whether the former exemptions violate the GMA is now moot.

¶34 In sum, substantial evidence supports the GMHB's conclusion that the standard stream buffers and the administrative minimum adjustments of the stream and wetland buffers violate the GMA because they are not supported by the best available science, and that Yakima County failed to present a reasoned justification for departure from the best available science. Accordingly, we reverse the superior court's order reversing the GMHB's buffer width decisions.

## B. Type 5 Ephemeral Streams

¶35 Futurewise contends the superior court erred in reversing the GMHB's decision that Yakima County's criti-

cal areas ordinance must include protections for type 5 ephemeral streams as critical areas.[3] As discussed above, we review the GMHB's legal conclusion de novo and its findings for substantial evidence. *Kittitas County*, 172 Wn.2d at 155. Like the GMHB, we must defer to Yakima County's planning actions unless they are clearly erroneous. RCW 36.70A.320(3), .3201.

¶36 The County argues, as it did unsuccessfully before the GMHB and the superior court, that the issue of critical areas protection for ephemeral streams has been waived or is time barred. Former YCC 16C.06.16, tbl.6-1 (adopted in Ordinance 13-2007), established for type 5 ephemeral streams: "**No buffer standards**[.] Type 5 streams are not regulated." In its petition to the GMHB, Futurewise challenged Yakima County's decision to exclude type 5 ephemeral streams from classification as critical areas requiring buffers. Later, Yakima County adopted Ordinance 2-2009, amending table 6-1:

**No buffer standards**

Type 5 streams are not regulated through buffer requirements, but activities such as clearing, grading, dumping, filling, or activities that restrict or block flow, redirect flow to a point other than the original exit point from the property or result in the potential to deliver sediment to a drainage way/channel, are regulated under clearing and grading regulations. These drainages may also be protected under geologically hazardous area, floodplain, stormwater, building and construction, or other development regulations.

YCC 16C.06.16; CP at 1078. The County contends Ordinance 2-2009 was enacted after complex settlement negotiations. After this amendment, the Department of Fish and Wildlife and the Department of Commerce withdrew their petitions challenging Ordinance 13-2007. The County argues because former YCC 16C.06.16, tbl.6-1, is no longer in effect and Futurewise failed to assign error to the new

---

[3] Yakama, and significantly the state Departments of Fish and Wildlife, Commerce, and Ecology, does not challenge the designation of type 5 ephemeral streams as not regulated under the critical areas ordinance.

table 6-1, we should consider Futurewise's challenge to YCC 16C.06.16 untimely and moot.

¶37 Neither the GMHB nor the superior court found Futurewise's issue regarding the designation and protection of ephemeral streams untimely or moot. The GMHB noted Ordinance 2-2009 did not change the designation or buffer widths for type 2, 3, and 4 streams and merely added clarifying language to the type 5 ephemeral stream designation. Because the context of Futurewise's argument regarding the designation of ephemeral streams as critical areas remained unchanged, the GMHB concluded its challenge to table 6-1 of YCC 16C.06.16 was not moot. The superior court agreed, additionally deciding Futurewise was not required to assign error to Ordinance 2-2009 because the provisions in former YCC 16C.06.16 that Futurewise originally challenged were retained in the amended code. "If the rule were otherwise," the court stated, "a municipality could serially readopt a challenged ordinance in the hope the challenger would fail to appeal at some point, allowing the municipality to claim the original challenge had been rendered moot" or untimely. CP at 1149.

¶38 An issue is not moot if we can provide any effective relief. *City of Sequim v. Malkasian*, 157 Wn.2d 251, 259, 138 P.3d 943 (2006). Our central issue is, considering the best available science, whether Yakima County's failure to designate and protect ephemeral streams as critical areas violates the GMA. The amendment of YCC 16C.06.16, tbl.6-1, by Ordinance 2-2009 does not affect this issue. Thus, Futurewise was not required to challenge Ordinance 2-2009 to pursue this issue before the GMHB or in the superior court. Therefore, the issue is not untimely or moot because we can provide effective relief. *Id.* at 259-60.

¶39 As noted, critical areas encompass waters of the state, including streams "and all other surface waters and watercourses within the jurisdiction of the state of Washington." RCW 90.48.020; WAC 365-190-130(2)(f). Local jurisdictions are required to designate critical areas "where

appropriate" and to adopt development regulations to protect those areas. RCW 36.70A.170(1)(d), .060(2). In designating and protecting these critical areas, Yakima County must include the best available science. RCW 36.70A.172(1).

¶40 Yakima County defines a "stream" as "water contained within a channel, either perennial, intermittent or ephemeral." YCC 16C.02.370. In YCC 16C.06.03(2), however, Yakima County limits the hydrologically related critical areas to perennial and intermittent streams, excluding ephemeral streams. And, under YCC 16C.06.06(5) "Type 5" ephemeral streams are not regulated. Futurewise argues that by refusing to designate ephemeral streams as critical areas, Yakima County effectively sidestepped the need to develop regulations based on the best available science to protect these streams. The question then would be whether Yakima County properly included the best available science in its decision to designate Type 5 ephemeral streams as noncritical areas or, if not, whether it had a reasoned justification for departing from the best available science. *Swinomish*, 161 Wn.2d at 430-31.

¶41 The BAS Review, in defining streams by water flow, describes ephemeral streams as those that "flow only in response to precipitation, with no groundwater interaction, and usually flow less than 30 days per year." AR at 3134. Ephemeral streams typically are found on steep ridges, although in the more arid areas of Yakima County, even low-gradient streams may flow on an ephemeral basis. In fact, more than one-half of the stream corridors in the county flow only intermittently or ephemerally.[4] Although the BAS Review states buffers should be continuous along a stream channel "[t]o the extent possible," it also notes that intermittent and ephemeral streams with a relatively flat slope may not need the full buffer width, which may be reduced to whatever is necessary to protect the stream from upslope sedimentation and changes in stream temperature.

---

[4] The BAS Review does not state what actual percentage of the streams in Yakima County is ephemeral.

AR at 3200. Some cited studies recommend buffers on steep slopes at least 98 feet wide to maintain an influx of large woody debris and to trap sediment.

¶42 In its findings and recommendations to Yakima County after public hearings and consideration of the BAS Review, the planning commission recommended distinguishing between intermittent and ephemeral streams based on "significant functional difference[s]." AR at 3475. The planning commission describes ephemeral streams as "stormwater driven," without riparian vegetation, and therefore not fish and wildlife habitat in themselves, although they may have "some habitat value." AR at 3475. Without citation to the BAS Review record, the planning commission additionally states the BAS Review acknowledges "that there must be a point along a stream corridor where the stream is no longer regulated as fish and wildlife habitat," and the BAS Review "indicates that the best point to make this distinction is between ephemeral and intermittent streams." AR at 3475. "Consequently," the planning commission concludes, "Type 5 streams are recommended to not be regulated as fish and wildlife habitat, though they may be protected under geologically hazardous area, floodplain, stormwater, construction, grading or other development regulations." AR at 3475.

¶43 Yakima County in Ordinance 13-2007 accepted the planning commission's recommendation "that Type 5 streams do not constitute fish and wildlife habitat conservation areas, but may be regulated as other critical areas or other regulations." AR at 2812. A portion of the statement that Type 5 streams are not regulated " 'as streams, but may be protected under geologically hazardous areas, floodplain, stormwater, construction, grading or other development regulations' " was stricken from former YCC 16A.06.06(5) (now YCC 16C.06.06(5)) as unnecessary. In a letter to Yakima County responding to the changes enacted in Ordinance 13-2007, Ecology did not assign error to the designation of Type 5 ephemeral streams as unregulated under the critical areas ordinance, but did recommend reinstating the deleted

phrase in YCC 16A.06.06(5) to alert the public that other protection measures should be applied to protect the "valuable riparian habitat" of Type 5 streams. AR at 1848.

¶44 As noted, language similar to the phrase deleted in Ordinance 13-2007 was added to YCC 16C.06.16, tbl.6-1, in Ordinance 2-2009. This language indicates that although Type 5 streams are not regulated with buffers, activities that block or redirect the flow of ephemeral streams or affect their ability to filter sediment are regulated under clearing and grading regulations. Additionally, "[t]hese drainages may also be protected under geologically hazardous area, floodplain, stormwater, building and construction, or other development regulations." CP at 1078. After adoption of Ordinance 2-2009, no party other than Futurewise has continued to challenge the designation of Type 5 ephemeral streams.

¶45 The GMHB found Yakima County failed to show with the best available science that the clearing, grading, and other development regulations referred to in YCC 16C.06.16, tbl.6-1, will protect the functions and values that ephemeral streams provide to the overall stream corridor system. Further, finding that ephemeral streams play an important role in the hydrological, biogeochemical, and ecological health of the stream corridor system, the GMHB concluded not designating ephemeral streams as critical areas violates RCW 36.70A.170 (requiring designation of critical areas where appropriate). The superior court on review reversed the GMHB's decision, concluding that "the Board's interpretation of [the statute defining 'waters of the state'] ignores that fact that there must be some lower limit to the definition of 'waters of the state.' " CP at 1150. We agree with the superior court assessment.

¶46 Yakima County has discretion to designate an area as a critical area "where appropriate" and must "include" the best available science when deciding what to designate as a critical area. RCW 36.70A.170(1)(d), .172(1), .060. The requirement to include the best available science

does not mean Yakima County must follow the best available science. *Swinomish,* 161 Wn.2d at 430. But the record must contain evidence Yakima County considered the best available science substantively in its development of the critical areas ordinance. *Kitsap Alliance of Prop. Owners v. Cent. Puget Sound Growth Mgmt. Hearings Bd.,* 160 Wn. App. 250, 267, 255 P.3d 696 (2011).

¶47 Here, the record suggests that although Yakima County substantively considered the best available science contained in the BAS Review, it may have departed from that science when it concluded that ephemeral streams are not critical areas. Apparently, none of the studies in the BAS Review indicate ephemeral streams are without function or value for maintaining fish and wildlife habitat, and none state that buffers are unnecessary along ephemeral stream channels. Thus, assuming Yakima County may have departed from the best available science when it decided not to designate or regulate ephemeral streams as critical areas, the question becomes whether Yakima County provided a reasoned justification for this departure. *Swinomish,* 161 Wn.2d at 430-31.

¶48 Although recognizing ephemeral streams have some habitat value, the planning commission concluded from the BAS Review that the lack of riparian vegetation along ephemeral streams and their brief existence as stormwater drainage did not justify their regulation as fish and wildlife habitat. This did not mean, however, that these stream channels should not be regulated at all. The planning commission recommended ephemeral streams could be protected under other regulations, including geologically hazardous area, floodplain, stormwater, construction, and grading regulations. Yakima County, in Ordinance 13-2007, concluded although Type 5 ephemeral streams are not fish and wildlife conservation areas, these streams "may be regulated as other critical areas or other regulations." AR at 14. And presumably in response to Ecology's insistence that the county code should alert the public that ephemeral

streams are protected in regulations other than the critical areas ordinance, Yakima County in Ordinance 2-2009 warned that land use activities that restrict, block, or redirect the stream flow, or that could affect sediment delivery, are regulated under clearing and grading regulations. YCC 16C.06.16, tbl.6-1; CP at 1078. Additionally, the language proposed by the planning commission and Ecology was included in table 6-1.

¶49 The GMHB concluded Yakima County provided insufficient science to support its decision not to regulate ephemeral streams as critical areas and did not show that other regulations will protect the functions and values of these streams. Our deference to the GMHB's decision is superseded by the GMA's requirement that growth boards give deference to a county's planning processes. *Kittitas County*, 172 Wn.2d at 154. When more than one appropriate planning choice exists, the growth board must defer to a county's discretion. *Id.* at 156. This deference is bounded, however, by the goals and requirements of the GMA. *Id.*

¶50 Although one of the central GMA requirements is to protect critical areas, local governments are urged to maintain and enhance natural resource-based industries, to conserve agricultural lands, and to discourage incompatible uses. *Swinomish*, 161 Wn.2d at 424 (citing RCW 36.70A-.020(8), .060(2)). Here, Yakima County apparently concluded from the BAS Review that ephemeral streams did not serve as significant fish and wildlife habitat and had a limited effect on the functions and values of other streams in the stream corridor system. Yakima County further concluded those ephemeral stream functions recognized as somewhat valuable to the stream corridor system—sediment and large woody debris dispersal—would be protected by other development regulations. Accordingly, Yakima County chose not to regulate ephemeral streams under the critical areas ordinance but under other land use ordinances. In other words, Yakima County concluded that designating ephemeral streams as critical areas was not "appropriate." RCW

36.70A.170(1)(d). This decision, choosing among multiple planning choices for protecting the functions and values of ephemeral streams, was the result of a reasoned process. *See Ferry County v. Concerned Friends of Ferry County*, 155 Wn.2d 824, 835, 123 P.3d 102 (2005) (growth boards require counties to consider competing scientific information and other factors in a reasoned process of analysis).

¶51 In sum, the GMHB failed to defer to Yakima County's reasoned justification for refusing to designate Type 5 ephemeral streams as critical areas subject to critical areas regulations. Accordingly, the superior court did not err in reversing the GMHB's decision that YCC 16C.06.16, tbl.6-1, adopted in Ordinance 13-2007, violated the GMA. Therefore, we affirm that portion of the superior court's decision.

¶52 Reversed in part and affirmed in part.

KORSMO, C.J., and SWEENEY, J., concur.