IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| AHO CONSTRUCTION I, INC., | ) | |
| | ) | No. 35558-6-III |
| Appellant, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CITY OF MOXEE, a political subdivision | ) | PUBLISHED OPINION |
| of the State of Washington, | ) | |
| | ) | |
| Respondent. | ) | |

FEARING, J. —

  *In order for an issue to be properly raised before an administrative agency, there must be more than simply a hint or a slight reference to the issue in the record.* King County v. Washington State Boundary Review Board, *122 Wn.2d 648, 670, 860 P.2d 1024 (1993)* (emphasis added).

  Aho Construction I, Inc. (Aho) appeals from the trial court's dismissal of its Land Use Petition Act, chapter 36.70C RCW (LUPA), action on the ground of failure to exhaust remedies before the Moxee City Council. We must decide how loud, listing, learned, legally lucid, and longwinded a party's presentation of an issue or legal argument must be before an administrative agency in order to exhaust remedies. We hold that Aho sufficiently exhausted its remedies. We reverse the dismissal of Aho's LUPA

action.

FACTS

Aho Construction submitted applications to the city of Moxee to rezone and subdivide a twenty-two-acre tract of property that Aho purchased on contract. Aho submitted a rezone application to Moxee because the development, to be named Rose's Place, contemplated ninety-one residences inside the city, which number exceeded the density allowed by the property's R-1 single-family zone. Aho sought rezoning to an R-2 single family zone. Aho also submitted to Moxee a preliminary plat for approval. Pursuant to State Environmental Policy Act of 1971, chapter 43.21C RCW (SEPA) requirements, Aho additionally filed an environmental checklist with the city.

The Rose's Place subdivision application plat map did not extend an existing city street, Chelan Avenue, through the subdivision. The proposed plat instead depicted Chelan Avenue terminating one-half block inside the subdivision and near the westerly border of the subdivision and recommencing in an easterly direction one-half block before Chelan Avenue would exit the subdivision.

The city of Moxee provided public notice of Aho Construction's applications for a rezone and subdivision approval. Numerous city officials and other government entities responded to the applications and environmental checklist. Moxee Police Chief Mike Kisner responded with concerns about the break in Chelan Avenue's continuity. Kisner wrote to Moxee's SEPA official:

It appears from a logical stand-point that it [Chelan Avenue] should be extended through the plat from Faucher Road [west side of the subdivision] to the proposed stub-out on the east side of the plat.

. . . .

Chelan Avenue is an important local access connection through this side of the city. It starts at Centennial Street and connects to the west side of Faucher Road. This proposal makes the obvious connection on the east side of Faucher Road but does provide a continuous connection to the east. This discontinuance of street connection will reduce our response time to this area and therefore does not promote the public health, safety and welfare of the citizens of Moxee.

Clerk's Papers (CP) at 126. Police Chief Kisner requested that Moxee condition any approval of the subdivision plat on the extension of Chelan Avenue through the entire subdivision.

Trevor Lenseigne, operations chief of East Valley Fire Department, the city of Moxee's fire service organization, also expressed concern over Chelan Avenue's discontinuance, and he requested the roadway be extended. Lenseigne wrote to Moxee's SEPA official:

In the proposed plat, it would be necessary for our large vehicles to make additional turning movements or drive around entire blocks to access certain locations if Chelan Avenue is not extended easterly. This could delay our response times in an emergency situation.

We believe it would be in the public's best interest if Chelan Avenue were extended through the plat, as it would provide us with better access to the proposed neighborhood and to future neighborhoods to the east.

CP at 129.

Benjamin Annen, Moxee's consulting engineer, reviewed the Rose's Place SEPA environmental checklist. Annen wrote to the city SEPA official:

3

The preliminary plat layout should be revised to extend Chelan Avenue from Faucher Road, continuous through the length of the development to the east property line, with provisions for extending in the future. Continuity within the roadway network is important as it provides consistent roadway connectivity, a reliable block system for various modes of transportation, and improved access for emergency vehicles. Consistent with previous plats and continuity, typical block lengths should range from 250 feet to 700 feet in length. Because the distance between Charron Road and Moxee Avenue is approximately 1,300 feet, it is our recommendation to extend Chelan Avenue through the development as an additional east/west roadway, greatly improving continuity.

CP at 123.

The city of Moxee conducted a review of the preliminary plat application under SEPA and issued a preliminary mitigated determination of nonsignificance (MDNS). The preliminary MDNS required that Aho implement various mitigation measures, including the extension of Chelan Avenue from its intersection with Faucher Road on the west side of the subdivision across the entirety of Rose's Place to its eastern boundary. Moxee issued the preliminary MDNS for purposes of additional comments from the public, government entities, and Aho.

John Manix, Aho Construction's engineer, penned a report to Mel Aho, owner of Aho, which report Aho forwarded to the city of Moxee with a request for relief from the mitigation requirement of extending Chelan Avenue. Aho's engineer disputed the need to extend Chelan Avenue, while writing that Rose's Place would add minimal traffic to the vicinity. Manix also iterated that emergency vehicles would wish to enter Rose's Place subdivision from arterials, such as Moxee Avenue, other than Chelan Avenue.

4

Manix posited that use of Chelan Avenue would increase emergency vehicles' response time.

Steven Madsen, Aho Construction's general counsel, also wrote Moxee officials and complained about the lack of justification for extending Chelan Avenue across the plat. We repeat below a portion of the lengthy argument presented by Madsen in the letter. The file given to each Moxee city council member, when the city council later reviewed Aho's challenge to the Chelan Avenue extension requirement, included the letter:

Chelan Avenue Extension:

Washington law is very clear that mitigation requirements imposed on land development by municipal jurisdictions must be roughly proportional to the environmental Impacts created by the development:

Where government issues a land use permit on condition that the applicant dedicate land to public use, the government must show an '*essential nexus*' between a 'legitimate state interest,' and the condition imposed. Nollan v. California Coastal Comm'n, 483 U.S. 825, 837, 107 S. Ct, 3141, 97 L. Ed. 2d 677 (1987). Further, to satisfy the Fifth Amendment, the government must establish that its proposed condition is *roughly proportional* to the Impact the proposed development will have on the public problem. Dolan v. City of Tigard, 512 U.S. 374, 391, 114 S. Ct, 2309, 129 L. Ed. 2d 304 (1994). And this requires 'some sort of individualized determination that the required dedication is related both in nature and extent to the impact of the proposed development.' Dolan, 512 U.S. at 391. We have identified four factors in these concepts: (1) a public problem; (2) a development that impacts the public problem; (3) governmental approval of the development based on a condition that tends to solve the problem; and (4) rough proportionality between the proposed solution and the development's impact on the

5

problem.  Burton v. Clark County, 91 Wash. App. 505, 520-23, 958 P.2d 343 (1998). Benchmark Land Company v. City of Battle Ground, 94 Wn. App, 537[,] 972 P.2d 944 (1999).

*In this case, the mitigation measure completely fails the "Dolan test."  Primarily, there is no "public problem" which would require such an extraordinary mitigation measure.*  All arterial streets accessing the proposed development currently operate at a Level of Service (LOS) A.  This is the highest level of service under currently accepted traffic management measurement systems.  There is no evidence that the additional traffic created by the proposed development will reduce this LOS or otherwise exacerbate any existing traffic problem.

Likewise, there is no evidence that fire and police services are inadequate to service the development.  Nevertheless, the City's "SEPA Responsible Official[,]" police and fire departments have all stated support for the mitigation measure.  Nowhere is there any explanation for how the requirement of the extension of Chelan Avenue through the proposed development mitigates an existing problem despite an estimated additional cost of hundreds of thousands of dollars to Aho, increased street maintenance costs to the City, and the loss of property tax revenue for the eight houses sacrificed by the street dedication.

. . . .

The fire district letter claims that if Chelan Avenue is not extended, "[t]his could delay our response times in an emergency situation."  *This is a bald assertion with no facts or evidence to support the kind of "Individualized determination" of the proportionality of the mitigation measure to the impact created.*  The fire district goes on to state, "We believe it would be in the public's best interest if Chelan Avenue were extended through the plat, as it would provide us with better access to the proposed neighborhoods to the east."  Under Kramer v. Clark County, 135 Wn. App. 1005 (2006), and Burton v. Clark County, 91 Wn. App. 505 (1998), the City cannot impose road exactions based on theoretical future developments that are not part of any existing development plan.  As the court said in Kramer,

Burton made it clear that possible future development is not sufficient to show that an exacted road would alleviate a traffic problem.  Burton, 91 Wn. App. at 528-29.  In Burton, it was possible for the future road to connect to another public road, but there was

> no evidence in the record to indicate when it would do so. Burton, 91 Wn. App. at 528. The court reasoned that in the absence of any evidence to indicate when such a road would be built, the exaction was not constitutional. Burton, 91 Wn. App. at 528-29. Applying this reasoning to the case before us, Kramer's potential future development is not sufficient to require Commerce Park to build an access road for Kramer now.
>
> Unlimited v. Kitsap County, 50 Wn. App. 723, 727, 750 P.2d 651, review denied, 111 Wn.2d 1008 (1988), controls this issue. In Unlimited v. Kitsap County conditioned a planned unit development on building a road to a landlocked commercial property. Unlimited, 50 Wn. App, at 724. The court noted that there was no expectation that this landlocked parcel would be developed at the same time or "anytime soon." Unlimited, 50 Wn. App. at 727. Even if it were, the court reasoned, the public has no interest in developing a private parcel or property and that it would be manifestly unreasonable for the county to exact access from a private developer. Unlimited, 50 Wn. App. at 727. Similarly, requiring Commerce Park to build Kramer an access road that would serve only his parcel is manifestly unreasonable.

CP at 159-61 (emphasis added) (lack of case name italics in original).

When the city of Moxee issued its final MDNS, Moxee retained the condition to the Rose's Place subdivision plat approval that Aho extend Chelan Avenue across the entire plat. The city calculated a need for extending Chelan Avenue through the subdivision to mitigate the impact caused by dense housing in the subdivision. The city deemed the street extension necessary to afford ingress and egress of residential traffic and emergency vehicles.

Under the city of Moxee's municipal code, Aho Construction appealed the city's final SEPA MDNS to a city hearing examiner. Also, under the city code, Aho appealed

7

the conditioning of the grant of the rezone and the subdivision plat approval on extending

Chelan Avenue to the hearing examiner.

Section 16.15.160 of the Moxee Municipal Code (MMC) establishes procedures

for integration of SEPA review into the city's project permit review process. The code

section includes provisions for appeals of SEPA determinations at MMC 16.15.160(4).

In turn, MMC 16.15.160(4)(b) declares:

> All appeals shall be heard by the hearing examiner in an open record
> public hearing. The hearing examiner's decision on the SEPA appeal may
> be appealed to the city council at a closed record appeal hearing.

A hearing examiner conducts a consolidated open record hearing on the underlying

project applications and the SEPA appeal.

Aho attached, to its notices of appeal of the city of Moxee decisions, engineer

John Manix's report and Steven Madsen's argumentative letter. The city of Moxee

consolidated Aho's appeal of the MDNS with the subdivision and rezone approvals'

condition on extending Chelan Avenue.

The city of Moxee hearing examiner Patrick Spurgin conducted a consolidated

open record hearing on the preliminary plat and rezone applications and the SEPA

appeal. During the hearing, both city staff and Aho representatives, including attorney

Steven Madsen, noted that the principal dispute for both the SEPA appeal and

preliminary plat application concerned the propriety of conditioning approval of the

project on the extension of Chelan Avenue.

The hearing examiner issued a written decision. The decision listed Steven

Madsen's letter as an exhibit before him. According to the hearing examiner, the letter:

> challenged the mitigation measure requiring improvements to the
> Faucher Road/Charron Road intersection to the extent it depended on third
> party approval as a condition of a project permit. He further contested the
> Chelan Avenue extension mitigation condition, asserting legal arguments
> regarding the constitutionality of the extension as an exaction that did not
> have a nexus to any public problem caused from impacts specific to the
> proposed subdivision. He also challenged any reliance on speculative
> future development on neighboring properties as the basis for imposing the
> mitigation condition requiring preservation of the prevailing grid system of
> local access streets, particularly in absence of a street plan, [HE p.100-102]

CP at 204-05. The hearing examiner later, in his decision, noted that Aho repeated the

arguments in the attorney's letter during the open record hearing.

In his decision, hearing examiner Patrick Spurgin reversed the city's MDNS

condition of extension of Chelan Avenue in that the avenue lacked an environmental

impact. This ruling gained Aho Construction only a pyrrhic victory because the hearing

examiner upheld the condition on other grounds when reviewing the rezone application

approval and the preliminary plat application approval. The examiner noted that Rose's

Place subdivision would exacerbate the public problems referenced in the city's MDNS.

The hearing examiner ultimately determined that Chelan Avenue must be extended

easterly to create a continuous corridor throughout the plat, because the city may base a

rezone on reasonable mitigation conditions. Also, the city may base a preliminary plat

approval on reasonable conditions as long as the condition contains proportionality to its

need. In so ruling, the examiner concluded that he lacked authority to declare any city action to be unconstitutional.

The Moxee Municipal Code distinguishes between the hearing examiner's examination of the city's SEPA MDNS and the hearing examiner's review of the city's conditional approval of a rezone application and preliminary plat application. The city code deems the examination of the SEPA MDNS as an appeal, and the hearing examiner's decision to be final unless appealed further. MMC 16.15.060(1), 16.15.160(4) and 16.15.190(2)(f). The code deems the consideration of the preliminary plat approval and rezone approval as a review, after which the hearing examiner presents a recommendation to the city council. MMC 16.15.190(2)(f). The city council automatically reviews the recommendation and issues a final decision after a closed record hearing. MMC 16.60.190 declares:

> The city council upon receipt of a recommendation on any preliminary plat shall at its next public meeting set the date for a closed record hearing to consider the matter in accordance with the procedures and standards of Chapter 16 MMC for conducting a closed record hearing.

MMC 16.15.230 defines a "closed record appeal:"

> (1) A closed record appeal shall be the administrative appeal on the record to the city council following a previous open record hearing on the project permit application before the hearing examiner.
> (2) A closed record decision shall be a closed record public meeting held by city council prior to the issuance of a final decision, but follows a previous open record hearing on the project permit application before the hearing examiner. With the exception of variances, appeals of Level 1 or 2 decisions, and appeals of SEPA decisions, the final decision on the project

permit will be rendered by the city council.
(3) Closed record appeal/decision hearing shall be on the record, and no new evidence may be presented.

Aho Construction did not appeal the hearing examiner's SEPA appeal decision, presumably because Aho prevailed. The city of Moxee did not appeal the SEPA determination either. Pursuant to MCC, the Moxee City Council then automatically conducted a closed record hearing, during one of its regular city council meetings, to consider the hearing examiner's recommendations with regard to the conditions imposed on the rezone application and the preliminary plat application. Steven Madsen, Aho's general counsel, appeared at the city council hearing on behalf of Aho.

During the course of the Moxee City Council meeting, Moxee Mayor Gregory La Bree announced the hearing as follows:

> Item No. 2 on the agenda is a closed public hearing to consider the recommendation issued by the hearing examiner for the 91 Lot Long Plat known as the Plat of Rose's Place, File No. SUBD 2016-01.
> At this time I'll open the closed-record hearing to consider the recommendations of the hearing examiner for a 91 Lot Long Plat known as the Plat of Rose's Place, File No. SUBD 2016-01. No new testimony will be heard.
> First we will hear the City staff, then we'll hear the applicant, and then I will give the City staff a chance to respond to the applicant's comments.

CP at 269. Thereafter, Bill Hordan, Moxee's planning consultant, spoke at length as to the history behind the dispute between Aho and the city of Moxee and to the justification of the condition to extend Chelan Avenue. Hordan noted:

11

So the second comment period produced a letter from the proponent's [Aho's] engineer with reasons why he didn't believe Chelan Avenue should be constructed to and through the plat.

And speaking of generalities, before they'll have an opportunity to talk, they mainly indicated that—the engineering—that it did not affect the level of service of these three agencies in the area.

The second comment period also produced a letter from the proponent's attorney. And he's indicated that the proponents felt the requested mitigation was a taking of the properties and not warranted. The proponent's attorney also stated in his letter that the proponent has concerns about the development of the intersection of Charron Road and Faucher Road and how that was to be accomplished.

CP at 270. Hordan added that Aho appealed to the hearing examiner and the notice of

appeal attached the engineer's and attorney's letters.

After Bill Hordan presented city staff's position in favor of adopting the hearing

examiner's recommendation, Moxee Mayor Gregory La Bree asked if anyone had

comments. Aho Construction attorney Steven Madsen responded:

MR. MADSEN: My name is Steve Madsen. I am general counsel for AHO Construction, the so-called attorney that's referenced in the documents. I understand Mr. Noe [Moxee counsel] is on the phone?

MR. NOE: Yes.

MR. MADSEN: I guess my—I discovered a query, my understanding is—I just drove here from Vancouver, Washington, literally into the parking lot as the meeting started so I apologize if I'm a little short-winded.

My understanding is that this is closed-record hearing, how is it that we're having testimony here tonight?

MR. NOE: Who are you addressing your question to?

MR. MADSEN: Mr. Noe, yes, I'm sorry, you, Mr. Noe.

MR. NOE: There wasn't any testimony. That was just a presentation to city council of the project itself. Everything that was talked about was previously talked about with the hearing examiner.

MR. MADSEN: Well, I guess I would object to substantial

characterizations of the hearing examiner's opinion. They're in writing and they speak for themselves anyway, I'll continue with my comments, then.

First of all, generally the reiteration of the facts here are correct, couple of exceptions I take. One is the decision of the SEPA was final, that's not a recommendation. This body has no jurisdiction over that decision. The City had the ability to appeal, the appeal period has passed, that was done.

I would object to the characterization that the hearing examiner ruled that this is not a taking. To the contrary, the hearings examiner was very clear that in oral comments stating his opinion, he did not have jurisdiction to rule on the face of this claim, that—and as I interpret the finding No. 5, that merely found it was within the City's general plan to make that requirement of the throughway of Chelan Avenue, that doesn't mean the City doesn't have to pay for it. In this case, the bill's over $500,000 and we have that uncontroverted here in the record and that's what the bill is going to be in a land use petition act claim.

So it's our position that, guess what, the City could require it under its own power of eminent domain, it's going to have to do that to take Chelan Avenue from this subdivision, that's really our only comment here.

We believe that the hearing examiner was not ambiguous in his findings, he simply didn't rule on the issue of whether or not this constituted an unconstitutional taking, that is in conversion of private properties for public use without just compensation, and that remains our position here tonight. Thank you.

CP at 272.

The Moxee City Council unanimously voted to approve the hearing examiner's recommendation to require the extension of Chelan Avenue as part of the rezone application approval and the preliminary plat application approval.

13

PROCEDURE

Aho Construction filed suit against the city of Moxee in superior court. The suit combined an RCW 36.70C LUPA claim with a complaint for damages under RCW 64.40 and a suit for damages for an unlawful taking under Washington State Constitution article I, section XVI. As part of its LUPA claim, Aho contended that the city of Moxee adopted a land use decision outside its authority by imposing a condition of approval requiring Aho to extend Chelan Avenue. Moxee also violated its city code by demanding the extension. According to Aho, Moxee breached the takings clause of the state constitution and the language of RCW 82.02.020 by demanding the extension without demonstrating that the exaction was reasonably necessary as a direct result of the proposed development or plat or demonstrating that the exaction was roughly proportional to the alleged impacts of the proposed development. Finally, Aho alleged in its LUPA petition that Moxee's land use decision breached United States Supreme Court decisions demanding an essential nexus between a legitimate state interest and the exaction imposed.

The city of Moxee filed a motion to dismiss and argued that Aho Construction failed to exhaust its administrative remedies in failing to raise its arguments before the Moxee City Council. In response, Aho contended that it raised its issues already during the open record hearing before the hearing examiner and was not required to reiterate those contentions during a closed record review with the Moxee City Council. The

14

superior court granted the motion to dismiss. The court dismissed all three causes of action.

## LAW AND ANALYSIS

We first identify the substantive causes of action pending before us and the questions for us to decide. Aho Construction assigns error to the trial court's dismissal of its LUPA petition for failure to exhaust its administrative remedies. Aho assigns no error to the dismissal of its claim under RCW 64.40 or its state inverse condemnation cause of action. We note that a property owner may combine a claim for compensation with a LUPA petition and that the procedures and standards applied to a LUPA petition do not extend to the claim for damages. RCW 36.70C.030. RCW 64.40.020(1) attaches exhaustion of remedies requirements to an RCW 64.40 claim, but Aho's inverse condemnation action may not have faced any exhaustion requirement. Nevertheless, we deem unchallenged the dismissal of the RCW 64.40 and inverse condemnation causes of action, and we only address whether Aho failed to exhaust its remedies under LUPA.

Our determination to limit our review to Aho Construction's LUPA claim does not negate Aho's ability to assert, within the context of its LUPA suit, that the city of Moxee's conditional approval of the rezone and preliminary plat constitutes an unconstitutional taking. Under RCW 36.70C.130(1), the superior court grants relief in a LUPA action if:

(b) The land use decision is an erroneous interpretation of the law, after allowing for such deference as is due the construction of a law by a local jurisdiction with expertise;

(c) The land use decision is not supported by evidence that is substantial when viewed in light of the whole record before the court;

*(d) The land use decision is a clearly erroneous application of the law to the facts;*

(e) The land use decision is outside the authority or jurisdiction of the body or officer making the decision; or

*(f) The land use decision violates the constitutional rights of the party seeking relief.*

(Emphasis added.)

LUPA, chapter 36.70C RCW, governs judicial review of land use decisions. RCW 36.70C.030. RCW 36.70C.060 addresses standing under LUPA and incorporates an exhaustion of remedies requirement for standing. The statute declares:

Standing to bring a land use petition under this chapter is limited to the following persons:

. . . .

(d) The petitioner has exhausted his or her administrative remedies to the extent required by law.

The statute states nothing of the degree of participation or the specificity with which issues must be raised before an administrative agency or municipality to seek judicial review. *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861, 868, 947 P.2d 1208 (1997). The superior court lacks jurisdiction over a LUPA petition if the petitioner failed to exhaust remedies. *Knight v. City of Yelm*, 173 Wn.2d 325, 336-37, 267 P.3d 973 (2011).

16

The exhaustion of remedies prerequisite furthers LUPA's policy of efficient and timely review of land use actions. *Durland v. San Juan County*, 182 Wn.2d 55, 68, 340 P.3d 191 (2014). In all settings, the doctrine of exhaustion: (1) insures against premature interruption of the administrative process, (2) allows the agency to develop the necessary factual background on which to base a decision, (3) allows exercise of agency expertise in its area, (4) provides a more efficient process, and (5) protects the administrative agency's autonomy by allowing it to correct its own errors and insuring that individuals do not ignore its procedures by resorting to the courts. *South Hollywood Hills Citizens Association for the Preservation of Neighborhood Safety and the Environment v. King County*, 101 Wn.2d 68, 73-74, 677 P.2d 114 (1984). Reversal of an agency on grounds not raised before the agency could create a demoralizing effect on administrative conduct. Knowing that even decisions made with the utmost care might be reversed on heretofore undisclosed grounds, administrative agencies could become careless in their decision-making. *King County v. Washington State Boundary Review Board*, 122 Wn.2d at 669 (1993).

RCW 34.05.554(1), a provision of the Washington Administrative Procedure Act, chapter 34.05 RCW, requires exhaustion of remedies before challenging agency action in superior court. Washington decisions apply the same exhaustion principles regardless of whether the exhaustion requirement arises from the Administrative Procedure Act, LUPA, or some other source.

17

In order for a litigant to establish exhaustion of administrative remedies, the litigant must first raise the appropriate issues before the agency. *King County v. Washington State Boundary Review Board*, 122 Wn.2d at 668 (1993). We must decide if Aho Construction apprised the Moxee City Council of the issues Aho seeks to litigate in its LUPA action. In its LUPA claim, Aho contends Moxee adopted erroneous interpretations of the law and violated Aho's constitutional right against the taking of its property without just compensation. Aho argues that the requirement of extending Chelan Avenue across Rose's Place constitutes an unreasonable exaction that lacks proportionality to the impact of proposed Rose's Place and that fails an essential nexus between a legitimate state interest and the exaction imposed.

We next juxtapose competing Washington Supreme Court decisions advanced by the city of Moxee and Aho Construction. The city forwards *King County v. Washington State Boundary Review Board*, 122 Wn.2d 648 (1993), to demonstrate Aho's efforts were inadequate. Aho cites *Citizens for Mount Vernon v. City of Mount Vernon* 133 Wn.2d 861 (1997), for its contention that it adequately exhausted remedies.

In *Washington State Boundary Review Board*, the Supreme Court addressed the King County Boundary Review Board's (Board) approval of two proposed annexations of property into the city of Black Diamond. King County, an annexation opponent, contended, before the superior court, that the Board's approval of the annexation violated King County Ordinance 9849. The superior court agreed. Nevertheless, King County

18

never cited the ordinance to the Boundary Review Board or suggested to the Board that approval of the annexation would violate the ordinance. Extensive testimony of county officials and numerous letters from the county, before the Board, omitted any reference to the county ordinance. Therefore, the Supreme Court refused to entertain, on appeal, the county's use of the ordinance. Oddly, the city of Black Diamond included a copy of the ordinance along with a memorandum arguing against preclusive effect of the ordinance in its submittal to the Boundary Review Board. The Supreme Court still held that King County's efforts failed to constitute "more than simply a hint or slight reference to the issue in the record." *King County v. Washington State Boundary Review Board*, 122 Wn.2d at 670.

In *Citizens for Mount Vernon v. City of Mount Vernon*, 133 Wn.2d 861 (1997), the Supreme Court considered the exhaustion doctrine in the context of a LUPA petition that followed public hearings before a city council. Citizens successfully challenged, before the city council, the city staff's approval of a commercial planned unit development. On appeal to the Supreme Court, the development's proponents argued that the citizens lacked standing to challenge the city's approval because the citizens failed to exhaust administrative remedies before the city council. The Supreme Court disagreed. Before the superior court, the citizens challenged the compatibility of the planned unit development with the underlying zoning. The citizens had not employed the term "compatibility" before the city council. Still the citizens had challenged the development

as inconsistent with the city's comprehensive plan. The Supreme Court ruled that LUPA

petitioners did not need to employ precise or technical legal terms in their arguments in

order to exhaust remedies.

The city of Moxee emphasizes differentiating facts in *Citizens for Mount Vernon*.

The Supreme Court, in *Citizens for Mount Vernon,* highlighted the nature of the

administrative proceeding as informal and involving members of the public,

unrepresented by legal counsel, voicing their concern. Moxee observes that lawyers

represented both the city and Aho in a formal adversarial procedure before the city

hearing examiner and the city council.

We note that the teaching of *Citizens for Mount Vernon* conflicts with the

principle that holds pro se litigants, although lacking in technical expertise, to the

standards of a lawyer. *State v. Bebb*, 108 Wn.2d 515, 524, 740 P.2d 829 (1987);

*Edwards v. Le Duc*, 157 Wn. App. 455, 460, 238 P.3d 1187 (2010); *State Farm Mutual*

*Automobile Insurance Co. v. Avery*, 114 Wn. App. 299, 310, 57 P.3d 300 (2002); *State v.*

*Vermillion*, 112 Wn. App. 844, 857-58, 51 P.3d 188 (2002). Regardless, we conclude

that Aho complied with a standard for exhaustion of remedies even consistent with a

higher standard that might be applied to represented parties.

We return to *King County v. Washington State Boundary Review Board*, 122

Wn.2d 648 (1993). One might conclude that the decision stands more for the proposition

that one does not exhaust remedies when only the opponent notifies the administrative

20

agency of a pertinent issue or applicable law rather than standing for the proposition that, to exhaust remedies, one must present "more than simply a hint or slight reference to the issue in the record." *King County v. Washington State Boundary Review Board*, 122 Wn.2d at 670. This court recently, in *Office of Attorney General v. Washington Utilities and Transportation Commission*, 4 Wn. App. 2d 657, 423 P.3d 861 (2018), abandoned the rule that another party's raising of an issue does not fulfill the requirement of exhaustion of remedies. We instead adopted the federal rule that excuses exhaustion requirements when the administrative agency has the opportunity to consider the identical issue as a result of the posturing of another party. *Natural Resources Defense Council, Inc. v. United States Environmental Protection Agency*, 263 U.S. App. D.C. 166, 824 F.2d 1146, 1151 (1987); *Local 512, Warehouse and Office Workers' Union v. National Labor Relations Board*, 795 F.2d 705, 714 (9th Cir. 1986), *abrogated on other grounds by Hoffman Plastic Compounds, Inc. v. National Labor Relations Board*, 535 U.S. 137, 122 S. Ct. 1275, 152 L. Ed. 2d 271 (2002); *Buckeye Cablevision, Inc. v. United States*, 438 F.2d 948, 951 (6th Cir. 1971).

We now review other Washington decisions on exhaustion of remedies to help address the parameters we employ in determining whether Aho Construction exhausted remedies. In *Wells v. Western Washington Growth Management Hearings Board*, 100 Wn. App. 657, 683, 997 P.2d 405 (2000), a party challenged the growth management hearings board's failure to suspend single-family residences in a watershed. This court

refused to entertain the challenge because the party failed to sufficiently give notice to the

board of its contention. This court wrote:

> In her opening brief to the Board, Wells included a paragraph that she alleges set forth her argument that the RCW 36.70A.302(3)(b)(i) exemption was inappropriate for Lake Whatcom:
>
> **The lake's public health and safety role, plus the above interpretation of the SMA's policies (ergo of GMA) makes the exemption provided by RCW 36.70A.302[3](b)(i) inappropriate for Lake Whatcom. I request that the Board specifically deny the County the use of this exemption in the Lake Whatcom watershed.**
>
> This paragraph, which incorrectly cites the relevant portion of the statute, is embedded in a section of the brief entitled "Lake Whatcom Watershed." The brief then refers to various water quality regulations and statutes, and reported water quality problems in the Lake Whatcom watershed. The superior court rejected Wells' argument that this paragraph adequately raised the issue on appeal.
>
> We affirm the Skagit County Superior Court order dismissing the case. The paragraph cited above is insufficient to show that Wells raised the issue of single-family residence permits before the Board. It is merely "a hint or a slight reference" to Wells' argument. Not only did she incorrectly cite the statute she intended to refer to, but she never mentioned permits for construction of single-family residences. In addition, the quoted paragraph, while in bold print, is buried in a lengthy, single-spaced brief and is not set out as a separate heading or issue.

*Wells v. Western Washington Growth Management Hearings Board*, 100 Wn. App. at

683-84 (footnote omitted).

In *Kitsap Alliance of Property Owners v. Central Puget Sound Growth

Management Hearings Board*, 160 Wn. App. 250, 272, 255 P.3d 696 (2011), this court

refused to address the property owners' claim that the board's decision violated its rights

under RCW 82.02.020. The property owners, in its prehearing brief, mentioned that due

process principles were codified in RCW 80.02.020, but did nothing further to discuss the

statute's application to the case. The court, nonetheless, agreed to hear the property

owners' due process challenge to a critical areas regulation because the board lacked

jurisdiction to resolve constitutional challenges.

Washington courts' most recent decision on exhaustion of remedies comes from

this court in *Office of Attorney General v. Washington Utilities and Transportation*

*Commission*, 4 Wn. App. 2d 657 (2018). In an investor owned utility ratemaking case,

the Attorney General's Office argued before the superior court that the Utilities and

Transportation Commission improperly used an attrition adjustment when setting

Avista's electricity rates. The Commission responded that the Attorney General's office

waived this argument because it failed to raise the contention before the Commission.

According to this reviewing court, the Attorney General's office presented its argument

in a:

> single-sentence conclusory paragraph and its brief did not discuss
> the issue further. . . . [The Attorney General's Office] did not cite any law,
> argue that this made the adjustment legal, or explain the significance of the
> "used and useful" terminology. [The Attorney General's Office's]
> treatment of the issue before the [Washington Utilities and Transportation
> Commission] was one sentence in a fifty-nine-page brief, in an
> administrative record spanning thousands of pages.

*Office of Attorney General v. Washington Utilities and Transportation Commission*, 4

Wn. App. 2d at 678.

23

This court, in *Office of Attorney General*, based its decision on the Administrative

Procedure Act's exhaustion statute, RCW 34.05.554(1), rather than the LUPA exhaustion

requirement. Nevertheless, as already noted, the Washington Supreme Court applies the

same standard under each act. This court characterized the Attorney General's office

treatment of the attrition adjustment issued before the Utilities and Transportation

Commission as "exactly the type of 'hint' or 'slight reference' to the issue that is

insufficient to preserve it on appeal." *Office of Attorney General v. Washington Utilities

and Transportation Commission*, 4 Wn. App. 2d at 678.

If the Attorney General's office had been the only one arguing an improper

attrition adjustment, the *Office of Attorney General* court would have refused to entertain

the argument. Nevertheless, another party had argued in its posthearing brief before the

Utilities and Transportation Commission that Avista's proposed attrition adjustment did

not satisfy law. This court did not depict the extent to which the other party presented its

argument before the agency, other than quoting portions of two sentences from the

posthearing brief.

The enduring principle arising from *King County v. Washington State Boundary

Review Board* reads:

> In order for an issue to be properly raised before an administrative
> agency, there must be more than simply a hint or a slight reference to the
> issue in the record.

122 Wn.2d at 670. Even though the principle might be dicta, we choose to follow this

principle because subsequent Washington courts consistently recite the principle. *Office of Attorney General v. Washington Utilities and Transportation Commission*, 4 Wn. App. 2d. at 678 (2018); *Goding v. King County Civil Service Commission*, 192 Wn. App. 270, 297, 366 P.3d 1 (2015); *ABC Holdings, Inc. v. Kittitas County*, 187 Wn. App. 275, 282-83, 348 P.3d 1222 (2015); *Kitsap Alliance of Property Owners v. Central Puget Sound Growth Management Hearings Board*, 160 Wn. App. at 272 (2011); *Wells v. Western Washington Growth Management Hearings Board*, 100 Wn. App. at 683 (2000); *Mader v. Health Care Authority*, 109 Wn. App. 904, 922 n.37, 37 P.3d 1244 (2002) *rev'd in part*, 149 Wn.2d 458, 70 P.3d 921 (2003). *Office of Attorney General* and *Wells* illuminate the "more than a hint" test by providing examples of insufficiency.

We conclude that the Washington test for exhaustion of remedies imposes a minimal burden on the challenger of the administrative agency action. Law is not a mathematical exercise. Thus, we cannot measure what constitutes more than a hint or greater than a slight reference. Nevertheless, we assemble, from Washington cases, factors germane to determining sufficiency of exhaustion, which include: the number of sentences devoted to an issue in any written brief given to the administrative agency; the amount of language devoted to the argument compared to the amount of language devoted to other arguments; the clarity of the presentation before the administrative agency; citations to statutes and case law and the accuracy of the

citations; if the party asserts numerous issues in a brief, whether the issue on appeal was separated in the brief or introduced with a heading; and whether the challenger's presentation to the administrative agency applied facts to the law. We expect further cases will add to these factors.

We glean from the record before the Moxee City Council that Aho Construction repeatedly asserted to the city that the city's demand for an extension of Chelan Avenue lacked proportionality and a nexus to a public interest and constituted a taking of property without just compensation. John Manix, Aho's engineer, penned a report that disputed the need to extend Chelan Avenue because the subdivision would add minimal traffic to the vicinity and increase emergency vehicle response time. Steven Madsen, Aho's general counsel, wrote Moxee officials and complained about the lack of justification for extending Chelan Avenue across the plat. The letter argued that the condition of extending Chelan Avenue lacked a legitimate state interest and constituted a taking of property. The letter accurately cited United States Supreme Court and Washington Supreme Court decisions supporting Aho's legal position and applied the law to the facts. Madsen not only cited the law but expounded on the law. The letter focused on the taking of property without just compensation, without the letter wandering into other topics. Madsen did not bury Aho's lack of a nexus, lack of proportionality, and taking arguments in lengthy briefs containing other arguments. Madsen wrote more than a sentence and more than a paragraph in favor of Aho's contentions.

26

During the hearing before the city of Moxee hearing examiner, both city staff and Aho representatives, including attorney Steven Madsen, noted that the principal dispute for both the SEPA appeal and preliminary plat application concerned the propriety of conditioning approval of the project on the extension of Chelan Avenue. The hearing examiner's written decision listed Madsen's letter as an exhibit before him. The decision noted that Madsen's letter presented constitutional arguments because the extension condition provided no solution to any public problem. The hearing examiner later, in his decision, noted that Aho repeated the arguments from Madsen's letter during the open record hearing.

Presumably, the city of Moxee agrees that Aho took steps, before the hearing examiner, necessary to exhaust remedies and advance its position before the city council. Presumably, Moxee only contends Aho failed to exhaust administrative remedies before the city council. Nevertheless, exhaustion of remedies before the hearing examiner should extend to exhaustion of remedies before the city council since the city council merely reviewed the hearing examiner's record and decision in a closed record meeting.

The hearing examiner's decision affirming the approval of the rezone and the preliminary plat conditioned on the extension of Chelan Avenue underwent automatic review by the Moxee City Council. The city council received the entire record from the hearing examiner, which record included the letter from Steven Madsen, the report prepared by John Manix, and the hearing examiner's decision. All three documents

27

mentioned Aho's complaint about the extension of Chelan Avenue in part on taking grounds. During Moxee consultant Bill Hordan's presentation before the city council, Hordan referenced the letters from Madsen and Manix.

If city council members lacked notice of Aho's claim of a taking, the council members failed to read the closed record before it and failed to listen to Steven Madsen. No city council member is on record stating that he or she did not comprehend Aho's arguments because of an inchoate or unintelligible presentation. This court sometimes receives briefs with less definition and less explanation as to a party's contentions.

The city of Moxee faults Aho because Steven Madsen, during his short presentation to the Moxee City Council, failed to assert the underlying basis for the takings claim, that being a missing nexus between the public need and the extension of Chelan Avenue and the absence of proportionality between the cost of the extension and the public benefit. Aho thereby criticizes Madsen's presentation to the city council as failing to provide an articulable reason to reverse the hearing examiner's ruling. We recognize the stunted nature of Steven Madsen's presentation to the Moxee City Council. Nevertheless, Moxee cites no law that an oral presentation must sufficiently identify the issues before the administrative agency when written pleadings or letters already identify the issues, particularly when the oral presentation occurs during a closed record review. When a party explains its position in writing, sometimes the best oral argument may be no oral argument. Nevertheless, when he spoke, Madsen emphasized Aho's contention

28

that the city requirement of Chelan Avenue constituted a taking. Madsen asserted that Aho's position remained that the city engaged in "an unconstitutional taking that is in conversion of private properties for public use without just compensation." CP at 272.

The city of Moxee contends that Aho may not rely on papers and arguments presented to the hearing examiner and needed to repeat those arguments before the city council. Such an argument recycles the argument critical of Steven Madsen's oral presentation. Moxee cites no law to support this additional position. The city council received the entire record before the hearing examiner and was tasked in a closed record hearing to either affirm or reverse the hearing examiner's ruling. That mission should have included a thorough reading of the hearing examiner's record. Perusal of the record would enlighten city council members of the issues presented by Aho that became issues before the superior court in the LUPA action. If the city council did not understand that it was reviewing Aho's arguments of a missing nexus, a lack of proportionality, and a taking, one wonders what the city council believed itself to be reviewing. Notice to the city council of those issues by the hearing examiner's record fulfills the purpose of the doctrine of exhaustion of remedies.

The city of Moxee characterizes city council members as lay people, who lack expertise in land use law. This argument ignores the fact that city council members had available city staff and a consultant with expertise in land use, with the consultant outlining the issues before the city council. Moxee city council members also had legal

29

counsel available and present by phone during the city council meeting. If council members lacked understanding, the city council could have postponed the meeting or recessed the meeting into a closed session to speak with legal counsel.

The city of Moxee also faults Aho because Steven Madsen's letter failed to cite RCW 82.02.020, a statute prohibiting a city from assessing payments for a property development not in proportion to public needs caused by the development. We note that none of the record before the Moxee City Council cites RCW 82.02.020. Based on Washington case law, we conclude that, if a party fails to cite a statute or ordinance before the administrative agency, the party may not rely on the statute or ordinance in the superior court suit challenging the agency action. Therefore, we rule, based on the exhaustion of remedies doctrine, that Aho may not rely on RCW 82.02.020 on remand as part of its LUPA petition claim. This ruling may assist Moxee none since Aho may still rely on the takings clause of the Washington Constitution and RCW 82.02.020 constitutes a statutory analog to the constitutional clause.

The parties agree that Aho could not raise its constitutional arguments before the city of Moxee hearing examiner. We do not know if Aho could raise constitutional challenges before the Moxee City Council, but question Aho's ability to do so when the city council merely reviewed the record before the hearing examiner. Assuming Aho could not raise its takings claim before the city council, an additional ground requires reversal on the basis of exhaustion of remedies at least as to the takings argument under

30

No. 35558-6-III
*Aho Construction v. City of Moxee*

the rubric of LUPA. This court may review an issue not adequately raised before the administrative agency if the petitioner lacked an opportunity to raise the issue below. *Kitsap Alliance of Property Owners v. Central Puget Sound Growth Management Hearings Board*, 160 Wn. App. at 272 (2011).

## CONCLUSION

Aho Construction delivered the Moxee City Council more than an intimation of the issue, more than an allusion to its argument, and more than a tipoff of a taking. We reverse the trial court's dismissal of Aho's LUPA petition and remand for proceedings consistent with this opinion.

_____

Fearing, J.

WE CONCUR:

_____

Siddoway, J.

_____

Pennell, A.C.J.

31